Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT
### for the
_Southern_ District of _New York_

Division   **19 CV 3346**

Case No. _____
(to be filled in by the Clerk's Office)

_Joshua Adam Schulte_

**Plaintiff(s)**
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

_See Attached_

**Defendant(s)**
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names. Do not include addresses here.)*

RECEIVED PRO SE OFFICE
2019 APR 15 PM 12:01
SDNY S.D. OF N.Y.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.      The Parties to This Complaint

### A.      The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                           Joshua Adam Schulte
All other names by which
you have been known:           Josh
ID Number                      # 79471054
Current Institution            Metropolitan Correctional Center (MCC)
Address                        150 Park Row
                               New York        NY          10007
                               *City*          *State*     *Zip Code*

### B.      The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1
     Name
     Job or Title *(if known)*      United States Attorney General
     Shield Number
     Employer                       Department of Justice
     Address

                                    *City*          *State*         *Zip Code*
                               ☐ Individual capacity   ☒ Official capacity

Defendant No. 2
     Name                           Department of Justice
     Job or Title *(if known)*
     Shield Number
     Employer
     Address

                                    *City*          *State*         *Zip Code*
                               ☐ Individual capacity   ☒ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

    Name

    Job or Title *(if known)*

    Shield Number

    Employer

    Address

*Federal Bureau of Investigation*

| *City* | *State* | *Zip Code* |

☐ Individual capacity    ☒ Official capacity

Defendant No. 4

    Name

    Job or Title *(if known)*

    Shield Number

    Employer

    Address

*U.S. Attorney for the Southern District of NY*

| *City* | *State* | *Zip Code* |

☐ Individual capacity    ☒ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☐ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.      Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.      Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☒   Pretrial detainee

☐   Civilly committed detainee

☐   Immigration detainee

☐   Convicted and sentenced state prisoner

☐   Convicted and sentenced federal prisoner

☐   Other *(explain)*

## IV.      Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      If the events giving rise to your claim arose outside an institution, describe where and when they arose.

*See Attached.*

B.      If the events giving rise to your claim arose in an institution, describe where and when they arose.

*See Attached.*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.   What date and approximate time did the events giving rise to your claim(s) occur?

*See Attached.*

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

*See Attached.*

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

*See Attached.*

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.  Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.  Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

MCC NY

B.  Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.  Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

Claim #4

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

In my cage at LøS in MCC

2.    What did you claim in your grievance?

See Attached.

3.    What was the result, if any?

All Categorically Denied; appealing Decisions

4.    What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

See Attached.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.  If you did not file a grievance:

1.  If there are any reasons why you did not file a grievance, state them here:

2.  If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*See Attached.*

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

    ☐ Yes

    ☒ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.    Parties to the previous lawsuit

        Plaintiff(s) _____

        Defendant(s) _____

    2.    Court *(if federal court, name the district; if state court, name the county and State)*

        _____

    3.    Docket or index number

        _____

    4.    Name of Judge assigned to your case

        _____

    5.    Approximate date of filing lawsuit

        _____

    6.    Is the case still pending?

        ☐ Yes

        ☐ No

        If no, give the approximate date of disposition. _____

    7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

        _____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☐ Yes

☒ No

D.   If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s) ................................................................................................

Defendant(s) ................................................................................................

2.   Court *(if federal court, name the district; if state court, name the county and State)*

3.   Docket or index number

4.   Name of Judge assigned to your case

5.   Approximate date of filing lawsuit

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   3/20/2019

Signature of Plaintiff       *Josh Schulte*
Printed Name of Plaintiff    Joshua Adan Schulte
Prison Identification #       Slave #79471054
Prison Address               MCC 150 Park Row
                             New York                NY        10007
                                    *City*                *State*       *Zip Code*

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney        _____
Printed Name of Attorney     _____
Bar Number                   _____
Name of Law Firm             _____
Address                      _____
                                    *City*                *State*       *Zip Code*
Telephone Number             _____
E-mail Address               _____

3/20/19
SCHULTE
v.
USA

P. 1/6                Complaint for Violation of Civil Rights

P. 1          Defendants:
              1.) Attorney General of the United States (AG)
              2.) U.S. Department of Justice (DOJ)
              3.) Federal Bureau of Investigation (FBI)
              4.) U.S. Attorney for the Southern District of NY (USASDNY)
              5.) Supreme Court of the United States (SC)
              6.) U.S. Bureau of Prisons (BOP)
              7.) Southern District of New York (SDNY)


              Collectively, "The Federal Terrorists"

I. B.      Continuation of defendants from page 3


           Defendant No. 5
              The Supreme Court of the United States of America
                — Official Capacity —


           Defendant No. 6
              The United States Bureau of Prisons
                — Official Capacity —


           Defendant No. 7
              The Southern District of New York
                — Official Capacity —

3/20/19
SCHULTE
v.
USA

P. 2/6              Complaint for Violation of Civil Rights

IV. Statement of Claim

A. Claims outside Institution:

(1.) vs. DOJ/SDNY/SC:   (In SDNY 8/17—)
See Attached "Joshua Adam Schulte v. United States of America"
"Section II. Illegally Incarcerated" beginning on page 9:

   a. Initial remand violated Due Process Clause of the 5th
      amendment (P. 10-11)
   b. Release on illegal and unconstitutional conditions (P. 11-14)
   c. Remand was unlawful, unconstitutional, and improper (P. 14-19)
   d. Pretrial incarceration as currently implemented is illegal (P. 19-35)
   e. The Bail Reform Act of 1984 is facially unconstitutional (P. 35-52)

There is no difference between pretrial detention for the legally innocent
and federal incarceration for the legally guilty; pretrial detention is
actually federal prison and is used to punish and coerce the innocent into
pleading guilty — The government has legislated through pretrial detention
that those who have not been found guilty beyond reasonable
doubt can be sentenced to indefinite incarceration.

(2.) vs. FBI   (In SDNY 3/17 - 8/17)
See Attached "Joshua Adam Schulte v. United States of America"
"Section III. A preliminary outline of the Federal Terrorists' illegal
activities against the plaintiff (pre-arrest) including fabricated SWs (53-55)

The FBI stole property, fabricated evidence in Search warrant affidavits,
and misrepresented evidence in the criminal complaint against the plaintiff

3/20/19
SCHULTE
v
USA

P. 3/6         Complaint for violation of civil Rights

IV. Statement of Claim

B. Claims inside institution  (Claim numbers continue from A.)

3.)  vs. FBI/USASDNY  (In Mcc 12/17–)
See Attached "Joshua Adam Schulte v. United States of America"
"Section IV. A preliminary outline of the Federal Terrorists' illegal activities
against the plaintiff (post-arrest) including attempts to conceal prior acts (56-62).

The Federal Terrorists lie to judges to remand and later revoke bail; use
absurd CP allegations to attempt coercion of espionage confession;
retaliates against plaintiff for contacting reporter and exercising free speech;
retaliates against plaintiff for seeking bail for all pretrial inmates;
retaliates against plaintiff for criminal justice reform literature;
Classify exculpatory evidence and other evidence damaging to prosecution;
retaliates against plaintiff for writing expert report against FBI malware cases;

4.)  vs. USAG / BOP  (In Mcc 10/18–)
See Attached "Joshua Adam Schulte v. United States of America"
"Section IV. A preliminary outline of the Federal Terrorists' illegal activities
against the plaintiff (post-arrest) including attempts to conceal prior acts (56-62)

US AG Jeff Sessions ordered BOP to torture plaintiff 10/2018

C. Date and time: Continuously from 3/13/17

D. See Attached "Joshua Adam Schulte v. United States of America"

3/20/19
SCHULTE
v.
USA

P. 4/6          Complaint for Violation of Civil Rights

# VI. Relief

1.) The plaintiff first seeks an immediate injunction against the Federal Terrorists granting him temporary relief from torture and release from federal prison so that he can adequately prepare a legal argument detailing why federal prison is inconsistent with the presumption of innocence and why torture is immoral and illegally applied to pretrial inmates.

See Attached "Joshua Adam Schulte v. United States of America"
"Section 1: Current conditions of confinement are similar to conditions imposed under Nazi Germany by the SS and Gestapo to torture political prisoners with psychological punishment to inflict permanent damage including death (P. 3-8)."

2.) See Attached "Joshua Adam Schulte v. United States of America"
"Section 5: Non-monetary damages sought, including release from federal prison and the ban of pretrial detention and torture of pretrial inmates, who are technically slaves, and other legal actions to limit the Police State and domestic terrorism (P. 63-64)."
   A. Release of plaintiff from federal prison and freedom for all slaves detained indefinitely without a trial
   B. The good faith exception to the 4th amendment declared Unconstitutional
   C. Mandatory minimum sentences declared Unconstitutional
   D. Plea Deals declared Unconstitutional
   E. Consent searches declared Unconstitutional
   F. Classified Information Procedures Act (CIPA) declared Unconstitutional
   G. Disbandment of the Fascist Police State including the FBI

3/20/19
SCHULTE
v.
USA

P. 5/6    Complaint for Violation of Civil Rights

VI. Relief (Continued from page 4)
   3. See Attached "Joshua Adam Schulte v. United States of America" "Section 6: Monetary Damages associated with illegal Federal Terrorist actions including torture and the loss of income (p. 65-69)."

    Total loss of income: $50,000,347,000
    Total punitive damages: 5,359,270,693
    Total:     $55,359,617,693

VII. Exhaustion of Administrative Remedies Administrative Procedures.
   E.2. Currently 11 grievances:
    1.) SAMs and solitary confinement violate 1st, 5th, and 8th amendments
    2.) Exposure to 24/7 bright lights that cannot be turned off constitute torture and violate the 8th amendment
    3.) Obstructing outside view with blacked out windows so inmates cannot see outside violate the 8th amendment
    4.) Limited, monitored family contact violate the 8th amendment
    5.) Limited commissary including ban of soaps, vitamins, and dental items violate the 5th and 8th amendments
    6.) Ban of prison library violates the 8th amendment
    7.) Limited discovery review violates the 6th amendment
    8.) No hot water violates the 8th amendment
    9.) Full head-to-toe shackles merely because labeled a SAMs inmate violates the 5th amendment
    10.) No television merely because labeled SAMs inmate violates 5th amendment
    11.) TRULINCS email denial with attorneys merely because SAMs inmate violates the 5th and 6th amendments.

P. 6/6                    Complaint for Violation of Civil Rights          3/20/19
SCHULTE
USA

VII. Exhaustion of Administrative Remedies Administrative Procedures
E.4. Grievance process has not yet reached highest level; awaiting MCC
Warden appeal. However, plaintiff partially accepts DOP's shift of
liability to DOJ and the AG for ordering them to torture
plaintiff. Plaintiff does not believe torture is ever acceptable
or even requires administrative procedure especially considering that
MCC blatantly obstructs the process (See section 6). If necessary,
plaintiff agrees to stall Claim #4 against BOP until full grievance
process completed.


6. The plaintiff wants the court to note that due to the PLRA,
prisons purposefully hinder and deter any and all requests for
administrative remedy. In fact, the MCC does not allow prisoners to
freely file administrative remedies, but first requests an informal
request through "COP OUT". Note that the first step in the
resolution process is the BP-8 titled "Informal Resolution Form";
prior to requesting this informal resolution form, the MCC requires
inmates to do an informal, informal "COP OUT" request. As a result,
the plaintiff first initiated the double-informal process on November
27, 2018, but prison officials ferried refused to give plaintiff
official BP-8 forms until February 21, 2019. Nothing at all
occurred in this three month delay. Prisons openly deter, harass,
and intimidate any who dare initiate the administrative
remedy process as is incentivized by the PLRA (and likely
Congress' intention).

JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## December 25, 2018

JOSHUA ADAM SCHULTE

   Plaintiff,

v.

THE UNITED STATES OF AMERICA;

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
AND THE DEPARTMENT OF JUSTICE, THE SUPREME COURT
AND JUDICIARY, THE FEDERAL BUREAU OF INVESTIGATION,
THE UNITED STATES ATTORNEY IN THE SOUTHERN
DISTRICT OF NEW YORK, AND THE BUREAU OF PRISONS,
COLLECTIVELY, "THE FEDERAL TERRORISTS"

   Defendants.

RECEIVED
SDNY PRO SE OFFICE
2019 APR 15  PM 12:02
S.D. OF N.Y.

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

This is merely a preliminary filling in which the plaintiff first seeks an immediate injunction against the Federal Terrorists granting him temporary relief from torture and release from federal prison so that he can adequately prepare a legal argument detailing why federal prison is inconsistent with the presumption of innocence and why torture is immoral and illegally applied to pretrial inmates.

- Section 1: Current conditions of confinement are similar to conditions imposed under Nazi Germany by the SS and Gestapo to torture political prisoners with psychological punishment to inflict permanent damage including death (P. 3-8).
- Section 2: A preliminary legal argument detailing why the plaintiff's incarceration and torture is unconstitutional (P. 9-52).
- Section 3: A preliminary outline of the Federal Terrorists' illegal activities against the plaintiff (pre-arrest) including fabricated search warrants (P. 53-55).
- Section 4: A preliminary outline of the Federal Terrorists' illegal activities against the plaintiff (post-arrest) including attempts to conceal prior illegal acts (P. 56-62).
- Section 5: Non-monetary damages sought, including release from federal prison and the ban of pretrial detention and torture of pretrial inmates, who are technically slaves, and other legal actions to limit the Police State and domestic terrorism (P. 63-64).
- Section 6: Monetary damages associated with illegal Federal Terrorist actions including torture and the loss of income (P. 65-69).
- Appendix / Exhibits (P. 70).

First, Mr. Schulte would like to convey to this court his prior impeccable record. Mr. Schulte served the United States of America for 7 years at the National Security Agency and the Central Intelligence Agency and developed software to protect the homeland and target America's enemies overseas. Mr. Schulte passed the most rigorous background checks, psychological testing, and polygraphs to obtain the highest security clearance in the government and his loyalty and integrity were unquestioned. Mr. Schulte's testimony in court would have once been trusted implicitly. Now, accused of crime(s) in which Mr. Schulte adamantly and profusely denies, he is considered a dangerous criminal subject to 24/7 solitary confinement in federal prison without any due process at the direction of the Attorney General. Mr. Schulte took an oath to protect and serve the United States and its Constitution, and he dedicated his life to this goal as do the military. Yet, do these brave men and women of the intelligence community and armed forces fight and die so American citizens can be denied due process and the presumption of innocence? Do Americans hypocritically fight terrorism and tyranny overseas only so its government can engage in tyranny, oppression, and torture domestically? The United States federal government spits in the face of the American military and dishonors their service, sacrifice, and historic accomplishments. Will the American courts, our last line of defense against fascism, condone torture and repudiate the Constitution or will it finally stand firm and protect the People? The greatest threat to democracy and the United States Constitution is the United States Federal Government itself.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

I. Injunction for torture relief: Mr. Schulte seeks immediate relief in the form of an injunction releasing him from federal prison. Mr. Schulte has suffered irreparable harm from torture imposed by the Federal Terrorists; additionally, this injunction grants him the ability to gather necessary documents, interview potential legal representatives, and finalize legal motions that his current terms of indefinite incarceration and torture under Special Administrative Measures (SAMs) make impossible. Ultimately, Mr. Schulte believes his confinement violates the entirety of the Bill of Rights of the United States Constitution, human rights guaranteed by natural law, and international law regarding human rights and even treatment of Prisoners of War (POWs)—specifically the Geneva Convention under which the Nazis were charged for similar war crimes, torture, and mass murder. Furthermore, Mr. Schulte believes senior DOJ officials and policymakers are criminally liable for human rights atrocities committed in the name of national security.

A. The plaintiff is currently incarcerated indefinitely at the Metropolitan Correctional Center in downtown Manhattan, under Special Administrative Measures (SAMs), imposed without due process by the AG, and under the most inhumane conditions imaginable

   1. 24/7 solitary confinement to a cage the size of a parking space
   2. Cameras in cage for 24/7 monitoring
   3. Cage has bright lights that CANNOT be turned off
      a. Some cells have lights that cannot be turned out resulting in sleep deprivation
      b. Some cells have no lights at all
      c. Plaintiff's current cell prevents plaintiff from sleeping and in fact, the use of bright lights is an enhanced interrogation technique that was declared illegal
   4. Exposure to weather extremities: No heat or A/C in cage!
      a. There was no heat in the building for a month from Thanksgiving to Christmas; resulted in sub 30s and the formation of ice in the cell
         (1) Exposure to the extreme cold is another enhanced interrogation technique
         (2) Plaintiff has spent days just shivering on the edge of his cage, slowly dying
      b. There is no current heating; temps subjected to outside weather (usually sub 50s)
      c. Poor air ventilation, no fresh air; No air intake cycling, no filtered air
   5. Cage has no time displayed and no mirrors; no ability to discern night from day
   6. Cages never cleaned
      a. Moved into dirty cells and forced to clean
      b. Cells often flooded
   7. Cells infested with rodents
   8. No running hot water (no way to properly wash hands)
   9. Cinderblock bed with small, thin, cheap cot to sleep on
   10. Sleep deprivation
      a. Bright lights (See 3)
      b. Exposure to extreme cold (See 4)
      c. Corrections Officers (COs) blast music and movies and talk all night long

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    d.  Every few hours at night COs come by with bright flash light to wake up plaintiff

11. Concrete "desk" and rectangular concrete block for a "chair"
12. Windows are blacked out so plaintiff cannot see outside
    a.  Creates disorienting sensation
    b.  Only reason to block outside view is to torture plaintiff
13. No locker or storage space, must store property on the floor with rodents
14. No pens or any writing utensils except bendable pencils with lead that cannot be read
    a.  Plaintiff cannot write anything, including letters or for his case
    b.  Plaintiff cannot properly document full extent of torture
15. No outside exercise permitted
    a.  No fresh air ever
    b.  No natural sunlight ever
    c.  No real exercise
    d.  Recreation in separate small cell consisting of almost no equipment; maximum of 3 times per week at one hour each for a maximum of 3 hours "exercise" per week
16. No communication permitted with any other inmates
    a.  Only 5 total inmates on MCC's max torture floor including El Chapo and Saipov
    b.  Torture inmates rotated every 30 days to one of 6 total torture chambers
17. Cage window slot on the door must be shut so plaintiff cannot peer outside cage
18. Only lieutenants hold cage keys
    a.  Lieutenants do not stay on floor
    b.  In case of fire or other emergency, plaintiff sentenced to death
        (1) There are no fire drills or any other drills
        (2) Most COs do not even know what to do in case of emergency
        (3) Death sentence egregious to the notion of liberty and a presumption of innocence
    c.  No lieutenants at night, plaintiff cannot be moved for hours even if medical emergency
19. Plaintiff shackled fully during any move
20. All moves to court and back require full strip search both ways
    a.  Plaintiff required to present scrotum for inspection
    b.  Plaintiff required to squat and present rectum for inspection
21. Restricted commissary similar to administrative segregation
    a.  Plaintiff denied purchase of pens, certain soaps, mp3 players, foods, radio
    b.  Restriction implemented to torture
22. Banned from participation in any religious service
23. Only a thumb toothbrush and limited access to soap and sanitary items
24. No pillow and limited sheets and prison jumpsuit
25. No medical care
    a.  Sickness and disease run rampant

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    b.  MRSA like staph

    c.  Hepatitis

    d.  No treatment for plaintiff's congenital heart defect nor blood pressure monitoring

26. No dental case
    a.  No dental cleanings
    b.  Treatment 6-9 months out even for emergencies (plaintiff NEVER been treated)
27. No psychological care
    a.  No care unless on hunger strike, which is common
        (1) MCC responds to hunger strike by forcing feeding tube
        (2) MCC literally keeps its victims alive to inflict maximum torture for the maximum amount of time
        (3) You aren't permitted to die to relieve unbearable torture
    b.  No treatment for stress, anxiety, depression
28. One plastic spork for meals; no replacements, no cups for water
29. No use of prison library
    a.  Cannot use the library so not allowed to read books
    b.  Not permitted to receive hardback books
    c.  Maximum books permitted to receive in mail is 5
30. No use of prison email or phone to contact attorney
31. Limited attorney visit
    a.  Ban of passing documents or receiving documents from attorney
    b.  Ban of contact visits with attorney
    c.  Ban from assisting in own defense
32. Limit to two 15-minute phone calls per month
    a.  Must be monitored live and are subject to immediate cancellation if what is said displeases the FBI
    b.  Plaintiff must pay for call at $3.15/call
33. Limit to one family visit per month for two hours; each visitor must visit plaintiff separately (family cannot visit together), one visitor for one hour, for a max of two total visitors
    a.  Visit must be monitored live, subject to immediate cancellation if what is said displeases the FBI
    b.  Family visit is not contact, plaintiff banned from hugging mother
34. All mail banned except to/from attorney and immediate family
    a.  30-90 day processing intake letters
    b.  Can only send one letter per week, limit one page
    c.  All mail subject to review and denial if what is said displeases the FBI
35. Banned from reviewing discovery
    a.  MCC does not permit plaintiff from reviewing discovery due to SAMs
    b.  Plaintiff has not reviewed discovery since September 2018

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

B. Plaintiff's torture is comparable to Nazi Germany's treatment of political prisoners and its Holocaust against the European Jewish population
1. Plaintiff is one of an estimated 40-50 prisoners out of 156,000 in BOP custody who is under inhumane SAMs and only one of a handful (perhaps 5) pretrial SAMs
   a. Almost all SAMs inmates are convicted murderers and terrorists held in H Unit at the U.S. Penitentiary Administrative Maximum, or ADX, the highest-security penitentiary in the federal prison system
   b. Plaintiff is subjected to harsher conditions under "pretrial detention" than ALL convicted prisoners serving sentences under the BOP
   c. SAMs imposed at the direction of the US AG without due process, because plaintiff retains highly classified information—in his head
2. The United Nations considers 15 days of solitary confinement as torture—the plaintiff has spent 3 months and counting in solitary confinement, with no end date in sight
3. Plaintiff has had similar psychological and physiological experiences recorded by Holocaust survivors
4. Shocking inhumane conditions violation of known state and federal laws for the treatment of animals
   a. People for the Ethical Treatment of Animals (PETA) have fought against similar treatment of animals and won in the legal systems as the courts have consistently found this treatment unethical for the treatment of animals
   b. Animals in zoos are treated more respectfully and humanely than plaintiff
   c. Death is almost certainly preferable to sentence of indefinite torture
5. Long-term solitary confinement is known to cause permanent damage
   a. Intolerance to sensory stimulation
   b. Agitation
   c. Confusion
   d. Paranoia
   e. Delusions
   f. Mental deterioration
   g. Dementia
   h. Long-term brain damage
   i. Post Traumatic Stress Disorder (PTSD)
   j. Severe depression and anxiety
   k. Personality disorders
   l. Permanent psychological damage
   m. Danger of mental breakdown, psychosis, and insanity
6. If unable to grant plaintiff's request for release, please take him out back by the shed and put a bullet in his head—but don't call this reprehensible system "justice"

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

C. Plaintiff requests immediate release from federal prison so he can adequately prepare this civil rights suit
   1. Unable to contact any lawyers under current restrictions
   2. Unable to review necessary discovery
   3. Unable to perform necessary legal research
   4. Unable to write
   5. Unable to mail documents or communicate with anyone without monitoring
D. Plaintiff also requests relief based on the following:
   1. United States District Court for the Southern District of New York denied plaintiff due process in "danger" determination according to 18 U.S.C. § 3142 specifications
      a. Court did not follow the law to clearly articulate danger posed by plaintiff
      b. Court did not enter discussion of applicable conditions of release to quell danger (because danger was unspecified)
      c. Court did not submit finding of fact including the specific, articulated danger and why no conditions of release would limit this danger
      d. Court did not grant plaintiff ability to review evidence against him, present evidence, nor call witnesses to testify
      e. Plaintiff's bail hearing(s) were all one-sided trials without due process
   2. Current incarceration constitutes violations of the 1st amendment to free speech, free press, and freedom of religion
   3. Current incarceration constitutes violations of the 2nd amendment right to bear arms
   4. Current incarceration warrantless searches and wiretaps violate the 4th amendment
   5. Current incarceration incompatible with presumption of innocence of 5th amendment
   6. Current incarceration incompatible with the due process clause of the 5th amendment
   7. Current incarceration violates speedy trial clause of the 6th amendment
   8. Current incarceration and legal restrictions violates assistance of counsel clause of the 6th amendment
   9. Current incarceration constitutes cruel and unusual punishment banned in the 8th amendment
   10. If defendant wins trial, he will be unable to return to society without extensive psychological treatment (if at all) due to permanent damage from torture
      a. United States Government has destroyed plaintiff's life simply because government has accused plaintiff of a crime
      b. There is no way to repay plaintiff years of his life and mental stability
      c. There is no way to repay plaintiff lost joy with family and friends
      d. There is no way to repay plaintiff lost dignity, intelligence, and peace of mind
      e. Does plaintiff actually win if victorious at trial? Government got its years of incarceration and psychological torture that it loves
      f. Plaintiff prefers death to current unbearable, inhumane torture
   11. Current incarceration prevents plaintiff from self-representation in criminal court

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

E. Solitary confinement is one of the most vile, inhumane, and destructive punishments every devised by mankind[1]

1. "Solitary confinement is worse than any torment of the body" – Charles Dickens
2. "Solitary confinement devours the victim incessantly and unmercifully; it does not reform, it kills" –Alexis de Tocqueville
3. "Solitary confinement is one of the most damaging things that you can do to a human being. People lose their ability to interact with humans, because they've been deprived of social contact." – David Fathi, Director of the ACLU's National Prison Project
4. "It's unassailable that solitary confinement causes psychiatric harm" – Dr. Stuart Grassian, former Harvard Medical School physician and researcher
5. "Prolonged (greater than 15 consecutive days) solitary confinement is cruel, inhuman and degrading treatment, and harmful to an individual's health" – National Commission on Correctional Health Care
6. "The human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators" – Supreme Court Justice Anthony Kennedy
7. American Bar Association passed a resolution in early 2018 calling on officials to limit the use of solitary confinement, and allow it "only in exceptional cases as a measure of last resort, where less restrictive settings are insufficient, and for no longer than is necessary to address the specific reason for placement, typically not to exceed 15 consecutive days."
8. In 2015, the Association of State Correctional Administrators (ASCA) issued a report critical of long-term segregation
9. The United Nations considers more than 15 days in solitary to be a form of torture
10. The plaintiff's life has been reduced to a provisional existence of unknown limit

F. Savagery, Barbarianism, and Slavery

1. It's illegal for anyone to lock an animal in a small cage 24/7—unless that animal is a human being and the torturer is the government, in which case it's called "justice"
2. The use of psychological torture to strip a man of his mind and deprive him of any and all forms of joy is barbaric
3. The United States Federal Terrorists are barbaric savages, un-evolved, and demented
4. Ultimately, these unimaginably evil conditions result in slavery; Slavery NEVER ended in America—it was merely refactored.
5. These human rights atrocities must end. No human being, no animal, no life form deserves such vile treatment.

---

[1] Quotations, prison facts, and other data from "Solitary Confinement Reforms Sweeping the Nation but Still Not Enough" by Christopher Zoukis, Prison Legal News, Volume 29, Number 10; October, 2018; And, "At the Federal Supermax, When Does Isolation Become Torture?" by Alan Prendergast, Westword, Prison Legal News, Volume 29, Number 9; September, 2018

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

II. Illegally incarcerated: Mr. Schulte's preliminary argument detailing the United States Government's illegal incarceration of him and other pretrial inmates in violation of the Bail Reform Act of 1984 as well as his arguments against the constitutionality of this act in its entirety; Mr. Schulte has witnessed federal prosecutors manipulating and abusing this law to detain individuals under the false pretence of danger and then offering immediate release after pleading guilty in contrast to the assertion of danger. There is no difference between pretrial detention for the legally innocent and federal incarceration for the legally guilty; pretrial detention is actually federal prison and is used to punish and coerce the innocent into pleading guilty—The government has legislated, through pretrial detention, that those who have not been found guilty beyond all reasonable doubt can be sentenced to indefinite incarceration. Mr. Schulte believes the judicial branch has abandoned its duty to the Constitution and the Republic by stripping all people accused of a crime of their inalienable rights and by enabling the legislature's war against this minority. Instead of protecting the rights of the minority, the judiciary has demonized and eradicated them. Today, accused and indicted Americans are no longer American citizens or even human beings but worthless trash. Mr. Schulte hopes to remind the judiciary of the Constitution and their duty to uphold it—especially for people disliked by society.

## Table of Contents

A.  Initial remand violated Due Process Clause of the 5th amendment .................................................... 10

B.  Release on illegal and unconstitutional conditions ........................................................................ 11

C.  Remand was unlawful, unconstitutional, and improper.................................................................. 14

D.  Pretrial incarceration as currently implemented is illegal.............................................................. 19

    1.  Current implementation violates Bail Reform Act and US v. Salerno ........................................ 19

    2.  Current implementation violates Constitution ........................................................................ 28

E.  The Bail Reform Act of 1984 is facially unconstitutional ............................................................... 35

    1.  Detention hearing facially unconstitutional ........................................................................... 36

    2.  Presumption of danger facially unconstitutional..................................................................... 39

    3.  "Likeliness-of-future-crime" facially unconstitutional ............................................................. 41

    4.  Denial of bail facially unconstitutional .................................................................................. 43

    5.  Coercive power of pretrial detention facially unconstitutional ................................................ 45

    6.  Liberty, Safety, and Security: What is Justice?....................................................................... 48

    7.  SUMMARY:...................................................................................................................... 50

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

A. Plaintiff's initial remand into federal custody on 8/24/17 by magistrate Henry B. Pitman violated the Due Process Clause of the 5th amendment (see Magistrate's Detention Order in Appendix A)

1. Background: 18 U.S.C. § 3142 permits the detention of a defendant pending trial. Congress enacted pretrial detention for the most dangerous criminals in the community accused of violence and murder; this statute creates a presumption of dangerousness such that *"no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."* The legislative intent was to carefully limit *"the circumstances under which detention may be sought to the most serious of crimes"* which were determined to be *"if case involves crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders"* (US v. Salerno 481 US 739)

2. Court's violation of 18 U.S.C. § 3142(f) safeguards: The plaintiff did not receive proper procedural due process in this hearing nor any bail hearing since then.

*"Section 3142(f) provides the arrestee with a number of procedural safeguards. He may request the presence of counsel at the hearing, he may testify and present witnesses on his behalf, as well as proffer evidence, and he may cross-examine other witnesses appearing at the hearing..."* *(Salerno, p. 741).*

The courts denied the plaintiff due process by denying him review of the government's evidence against him, refusing to permit him to introduce evidence and proffer evidence, and denial of calling witnesses in his favor. Since the plaintiff had not yet been indicted, he was not permitted to discovery rules and the prosecutor denied him access to the search warrants, alleged IRC chats, alleged Google searches, and forensic review of the alleged computers. How can the plaintiff present evidence in his favor without this review? The plaintiff was not permitted to introduce his own evidence such as successful polygraphs that countered allegations. The plaintiff was not permitted to call witnesses in his favor. In fact, the plaintiff could do nothing but listen to the evidence and arguments of the prosecutor and do nothing but deny the outrageous allegations against him; this was not enough—the magistrate wanted evidence, and ruled that the plaintiff failed to rebut the presumption of danger (GUILT) against him and thus, was sentenced to indefinite incarceration.

3. Court's violation of 18 U.S.C. § 3142(e), (f), and (g), and (i) indentified threat:

*"On the other side of the scale, of course, is the individual's strong interest in liberty. We do not minimize the importance and fundamental nature of this right... When the government proves by clear and convincing evidence that an arrestee presents an <u>identified</u> and <u>ARTICULABLE THREAT</u> to an <u>individual</u> or the <u>community</u>, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing THAT threat" (Salerno, p.750-751).*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

The magistrate did not specify the nature and seriousness of the danger to any person or the community that would be posed by the plaintiff's release per 3142(g)(4). This is absolutely critical to overrule an individual's liberty interest. Thus, the ambiguous notions of some abstract "danger' to unknowns as presented at the detention hearing was insufficient.

Additionally, the magistrate improperly filed these written findings per 3142(i)(1) and even failed to state whether the plaintiff was ordered detained due to danger or flight. Since the specific nature of danger for a non-violent, victimless crime was not discussed, then there could be no valid finding of detention by law. What danger does the plaintiff pose? And to whom? Without this identification there can be no honest discussion of applicable conditions to remedy the danger and therefore clearly violate procedural due process.

4. Summary: The plaintiff's remand did not follow the procedure prescribed by law; he could not review evidence or present evidence to the court and the judge declared vague, unarticulated notions of some obscure future crime he was deemed likely to commit against the unknown. This did contribute to extreme judicial error and prejudice that would impact the plaintiff's entire case and effect all future bail applications as this initial error set into motion the current events that have ultimately led back to indefinite incarceration and torture by the State; if this legal process were properly followed then the plaintiff would never have been remanded in the first place and most likely this case would have been dismissed by now.
    a. Detention hearing requires proper safeguards
    b. Plaintiff did not receive proper safeguards
    c. Ergo, plaintiff's rights were violated

B. The subsequent overturn of the magistrate's decision resulted in the plaintiff's release on illegal and unconstitutional conditions on 9/15/17 following the 9/13/17 bail hearing (see District Court's Release Order and Conditions in Appendix B).
    1. The same violation of 3142(f) occurred where the plaintiff was not permitted to even review the government's evidence much less present his own evidence. The same violation of 3142(g) occurred where vague, unarticulated notions of some obscure future crime were indicated without proper identification and discussion of the nature and seriousness of the danger to any person or the community as required by law. The court simply took the recommendations of pretrial services without describing the danger or even permitting the defense to propose alternatives—there was no opportunity for the defense to convince a judicial decision-maker that the conditions were not necessary.
    2. Adam Walsh's 3142(c)(1)(B) eviscerate the government's duty to present evidence, the defendant's reasonable opportunity to offer opposing evidence, and the judicial

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

review and determination; the conditions were set by law in clear violation of the 5th amendment's due process clause. At least 7 district courts have ruled this provision unconstitutional.

3. The release condition of 3142(c)(1)(B)(viii) that states an individual must *"refrain from possessing a firearm…"* is unconstitutional and in direct violation of the 2nd amendment. The 2nd amendment does NOT provide an exemption or exception to those accused of a crime and therefore this condition of release is unconstitutional.

4. The release condition of 3142(c)(1)(B)(xiv) is overly broad as it states *"satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community"* which grants the court, or rather, pretrial services, complete autonomy and an infinite possibility for release conditions instead of a known and bounded set that are predetermined to be constitutional; while perhaps not illegal, it gives rise to abuse and infinite potential challenges—what is the purpose of listing out possible conditions if one of those possible conditions is the possibility of any other condition?

   a. One of these unconstitutional restrictions was the complete ban of all computers, electronic devices, and the internet. 3142(c)(1)(B) states the LEAST restrictive combination of conditions by utilized, but instead of ONLY applying the unconstitutionally-required home detention and electronic monitoring, the court went even further to ban ALL electronic devices and the internet in an obvious assault on the 1st amendment. Additionally this ban greatly restricts communications with attorneys, the plaintiff's ability to contribute to his own defense, and his access to discovery and other evidence paramount to his defense, thus not only does the complete ban violate the first amendment but also 5th amendment procedural due process as previously discussed in Adam Walsh AND substantive due process because the plaintiff is literally banned from viewing his discovery. In addition to these difficulties, a complete internet ban makes it impossible to pay bills online (which many places only offer online pay now); work in any capacity to earn a living, or to enjoy life's simple pleasures like Netflix, Amazon shopping, or any other online service. The internet can reasonably be considered a group of a group of people, and thus, the government has specifically denied the plaintiff from communicating with any of these groups at the point of a gun. Furthermore, the Supreme Court ruled in Packingham v. North Carolina that barring registered sex offenders (who are CONVICTED FELONS) from using social media like Facebook and Twitter violates free speech; the plaintiff has never been convicted of any crime let alone a convicted, registered sex offender, thus he should clearly be afforded more civil liberties, not less. So, how exactly is the STRICTER complete ban of the entire internet and all electronic devices anything BUT unconstitutional? In the majority opinion, Kennedy said that social media sites served a critically important role in modern

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

communication and were therefore a space where free speech protections were particularly important. Thus, this blatant disregard of the law flies in the face of the Supreme Court, and since the plaintiff was remanded for violating this unconstitutional release condition then he must be released without this condition. How is internet monitoring not equally effective and a better, least restrictive alternative?

b. Another unconstitutional restriction is 24-hour house incarceration which violates the 1st, 5th, and 8th amendments. Incarceration of any kind is clearly unconstitutional when applied to a pretrial defendant; this abhorrent injustice constitutes punishment before trial for a crime legally presumed untrue.

   (1) 1st amendment violations: The plaintiff was incarcerated and therefore banned from communicating with anyone—the combination of this and the internet ban essentially banned him from all free speech. The specification for 24-hour house incarceration also incredulously included a provision explicitly banning the plaintiff from attending religious services pending a request to the judge. The plaintiff could not assemble anywhere freely, speak freely, or perform any freedom specified by the first amendment. Just as the 2nd amendment has no clause of exemption for those accused of a crime neither does the 1st.

   (2) 5th and 8th: Not only was procedural due process violated by the requirement of these restrictions, but also substantive due process and the 8th amendment's cruel and unusual punishment as 24-hour house incarceration shocks the conscience in an un-American fashion. 24-hour house incarceration prevented the plaintiff from purchasing groceries so he could eat and survive, prevented him from retrieving the mail or walking down the hall to throw out the trash, prevented him from exercising or accessing the top floor deck for fresh air, and prevented him from even opening the apartment door—only court or attorney visits which had to be approved with 48-hour notice. The plaintiff was clearly still presumed guilty as incarceration IS incarceration—it doesn't matter WHERE someone is deprived of liberty; the plaintiff was still banned from leaving his tiny NYC apartment or doing anything at the point of a gun. Although he posted bail he was still incarcerated in violation of both the excessive bail clause and cruel and unusual punishment—this is punishment and incarceration without conviction; the court demands the plaintiff pay rent and for upkeep of his apartment while simultaneously banning him from working and therefore condemning him to bankruptcy in a warped-debtor's prison type scenario. How could he even afford to pay attorneys without income? He was fired and prevented from working at the point of a gun. This unconscionable cruel and unusual punishment is also INDEFINITE as there is no known end date—psychological torture. The plaintiff is stuck in limbo unable to assist on his own defense to move forward. He's also forced to have

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

a roommate or maid or else he would literally die on the floor—any such "release condition" is tantamount to a death sentence by the court and cannot be in any way legally binding.

(3) Right to Vote: The plaintiff's restrictions provided no exemptions for voting and so the United States government denied him the right to vote in November 2017 (and November 2018).

5. Consent to unconstitutional restrictions: The fact that the plaintiff consented to these unconstitutional restrictions cannot be counted against him as he had no choice—the procedural due process violation as well as court impropriety prevented him from reasonably opposing the evidence against him and suggesting alternative conditions that would nullify the "danger" to the community. Also, certainly no contract can be considered legally binding if a condition was illegal; for example, indentured servitude would not be legally-binding nor would lashings so why should other constitutional violations be acceptable? Thus, no illegal or unconstitutional provisions can be considered legal and therefore cannot be legally violated. Also, there is very little choice—federal prison or unconstitutional restrictions? Which would you choose? The one liberty granted by 24-hour house incarceration, the liberty to die in your own bed, far exceeds zero liberties. Indeed, these coercive conditions would have facilitated the plaintiff's consent to a release condition of the stockades or daily beatings if it meant freedom—would these conditions be held up? Judges were never meant to posses such raw power to destroy a man's entire life; The Constitution and justice always requires the defendant's release pending trial.

6. Self-representation impossible, hiring attorney next-to-impossible: The plaintiff had no ability to do research and determine that there was plenty of case law to back his argument. In fact, he had no ability to search and hire attorneys and instead had to rely on others for this essential right. Had the plaintiff not been so severely restricted, he would have researched and presented evidence of the illegality of his conditions to the court—but there would be no need to do so if he wasn't so severely restricted.

7. Summary: Since these release conditions were unquestionably unconstitutional then it is impossible to legally violate unconstitutional release conditions. Requiring an individual to accept alterations to the Bill of Rights or face indefinite incarceration is an abomination to justice.

   a. —Arguments from A— (same bail hearing procedural violations)
   b. Plaintiff must choose between Bill of Rights and federal prison
   c. Bill of Rights inalienable
   d. Therefore release conditions unconstitutional

C. The court's remand order was unlawful, unconstitutional, and improper (see District Court's Remand Order in Appendix C)

   1. The court's order stated:

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*"Refrain from possessing or using a computer, computer network and/or internet access unless specifically approved by pretrial services. Pretrial services shall use its discretion as to whether the defendant should or should not possess any devices with internet access while out on bail. If pretrial services believe the defendant can possess such a device, then pretrial is authorized to monitor the device."*

a. Since this release condition is clearly unconstitutional per B) 4) a) then it is impossible to violate an unconstitutional release condition; just as a violation of an order to meet daily to be flogged can't be legally binding neither can the 1st amendment violation of free speech outlined in this document as well as the due process procedural violation of 3142(C)(1)(B) which precipitated the harsh restrictions imposed.

b. The verbage of the order itself does NOT explicitly prohibit third party access and in fact third party access mitigates and/or nullifies danger to the community as there is another party driving. The purpose of the unconstitutional ban of the entire internet was to prevent some obscure "danger" which can only be inferred to indicate the court fears that the plaintiff will attempt to download and/or possess illicit material despite never doing so in the past and despite the legal presumption of innocence. This non-existent danger is entirely avoided by a third party accessing the internet.

   (1) The plaintiff wanted to ensure that his understanding of this condition was accurate so he contacted the people charged with enforcing the court's order, pretrial services, and asked—not in any attempt to modify the order—but for clarification to ensure that the plaintiff's cousin's access of his email, online bill pay, and coordinating with the tenets of his property was in fact allowed under the court order. The plaintiff received the affirmative.

   (2) Separately, the plaintiff's cousin contacted pretrial services and received the same affirmative. At the request of pretrial services, he brought them a signed note stating his laptop would exist in the plaintiff's apartment and that the plaintiff would not have access to it.

   (3) Pretrial services approved of the plaintiff's Verizon router when they checked his home prior to release—thus it's inferred that others clearly would have access to the internet around the plaintiff and that the internet ban didn't somehow extend and ban all those around the plaintiff from accessing the internet or for them to search or do something for the plaintiff.

   (4) If the plaintiff was in federal prison he could email or call family or friends and request them to Google and/or access the internet on his behalf so how could it even be possible that this was not permitted under house incarceration?

   (5) The plaintiff's intent was clearly to have people manage his affairs for him and any requests were not attempts to subvert the court's order but rather

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

attempts to handle his affairs that he was unconstitutionally banned from doing. Is asking the plaintiff's cousin to pay the bills so they had heat for the winter REALLY a violation of the court's order? Remember the ONLY reason the plaintiff's cousin was living with the plaintiff was to buy him food, take out the trash, and perform life essential duties that the plaintiff could not afford. To limit the cousin's access while he's doing the plaintiff a huge favor is idiotic—the entire situation was an affront to justice from the beginning.

c. So, based on the verbage there is no explicit ban on asking a third party to initiate searches and other activities—the plaintiff's intent was clearly to abide by the judge's ruling. Had pretrial services told the plaintiff no, his cousin could not handle his affairs on the plaintiff's behalf then the plaintiff would not have asked him to do so. Furthermore, any attempts by the plaintiff's cousin to use Tor or any other LEGAL, proxy server are well within his right; that said, the plaintiff never asked his cousin to use Tor on his behalf nor did he. This confusion was mostly due to the complete breakdown of communication as the plaintiff was in federal prison and the confusion by his attorney of what Tor was. The plaintiff did not really push to challenge the government's allegations because 1.) The plaintiff assumed his cousin used Tor and 2.) The plaintiff didn't think it mattered as no logical, reasonable person would ever think that the plaintiff's ban from the internet illogically meant his cousin couldn't use Tor. To repeat, the plaintiff never asked his cousin to use Tor, nor did he ever have Tor installed on his laptop. Additionally, the plaintiff's legal team was in the process of requesting computer and internet access so he could properly view discovery and work on his own case and any claims by the prosecutor that the plaintiff and his cousin conspired to deceive pretrial services or for any other nefarious purpose are ridiculous and untrue.

2. 18 U.S.C. § 3148(b) Specifies that there must be CLEAR and CONVINCING evidence that the person has violated a condition of release, but 1) clearly illustrates the plaintiff's intentions to fully comply with the unconstitutional release condition. Thus, no reasonable individual could ever say that clear and convincing evidence exists that the plaintiff willfully violated the unconstitutional release condition banning the plaintiff from computers and the internet. Hence, the plaintiff cannot be violated and remanded.

3. The court used 3148(b)(1)(B) citing violation of release conditions AND 3148(b)(2)(A) citing that "there is a combination of events here, including the fact that the victim has been identified in Virginia" to find a "clear danger", but the Virginia sexual assault victim was identified back in the first bail application in August and that wasn't even the issue discussed before any judge. Thus, this statement is baffling. The only difference was Virginia "decided" to press charges against the plaintiff without the victim's consent. However, as the court has already

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

keenly noted, there is no federal jurisdiction over Virginia and any allegations in Virginia cannot be used to detain the plaintiff in federal custody especially considering the allegations are from several years ago and isn't an alleged crime committed on bail—therefore it isn't even relevant for bail on this case. Virginia has its own bail system and is perfectly able to determine bail in Virginia. So it's entirely outside the jurisdiction of the SDNY to order a detention based on what happens in Virginia—all it accomplishes is deadlock where the plaintiff is remanded from the Virginia's case but simultaneously banned from ever addressing the Virginia issue because… he's remanded in federal custody. In fact, the court specifies no other event but simply rules that some obscure danger exists; some unspecified, ambiguous danger. So, the plaintiff is remanded based on a violation of an ambiguous, unconstitutionally vague release condition per 3148(b)(1)(B) and ruled that the plaintiff is a danger per 3148(b)(2)(A) and therefore ordered remanded. However, 3148(b)(2)(A) refers to 3142(g) again to determine if there still exists conditions of release that can assure that the plaintiff will not pose a danger; remand to federal custody can NEVER be used as punishment.

a. Once again 3142(g) is violated as has occurred continually—the plaintiff is legally entitled to a thorough determination of what specific danger he poses to the community and what conditions nullify that danger. 3142(g)(4) states as a consideration, *"the nature and seriousness of the danger to any person or the community that would be posed by the person's release"*. In review of 3142 and US v. Salerno it is abundantly clear that Congress and the Supreme Court interpreted any detention hearing on danger to specify the danger and appropriately discuss potential conditions that would adequately quell that danger. Hence, the communication of the danger and threat is paramount to the determination that no possible conditions can assure the public safety. This never occurs in ANY of the plaintiff's bail determinations. Not once. How can the plaintiff be declared a danger that must be disabled if no identified danger or articulated threat is communicated?

(1) If the threat is simply computer-related then simple monitoring clearly ends that threat—there is never any need to detain any individual on the sole basis of a prediction of some future crime to be committed on the internet; internet monitoring is ALWAYS able to quell that threat.

(2) Without the definition of the threat and a discussion of mitigating factors and conditions of release, we are left with an oppressive system where a judge can leave "danger" ambiguous and the threats undefined and order detentions without due process. Hence, each and every bail hearing has resulted in an incredulous violation of procedural due process and an indefinite assault on the plaintiff's liberty—18+ months of substantial losses and irreversible damage.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

b. The plaintiff's remand has the appearance of punishment. The interruptions of the plaintiff's attorney during his arguments, the statement that it's a "convenient misunderstanding", the lack of understanding in the Virginia case per the statement that the "victim has been identified", the refusal to even ask pretrial services about its conversations with both the plaintiff and his cousin, and finally the ruling that NOW somehow danger exists following the plaintiffs cousin using the internet and Virginia arresting the plaintiff for allegations that were known about in August, that NOW, a danger exists without specifying what danger or the causes that created the danger besides the Virginia issue (which the court has no jurisdiction) indicate a decision intended to punish the plaintiff. However, this is not the legal remedy for the belief that a court order was violated—that is what contempt of court is for.

    (1) The court's ire is likely due to the prosecutor's disingenuous letter sent to the court intending to manipulate the court by omitting the facts and spinning lies. The prosecutor purposefully misled and manipulated the court by not telling the court that the plaintiff's cousin lived with the plaintiff and had approval by pretrial services to use his laptop, access his email, and manage his affairs. This omission led the court to the remand decision

    (2) It's also worth informing the court that the FBI had the alleged sexual assault pictures for 6 months and only sent them to Virginia when the plaintiff was released on bail in a blatant attempt to have him arrested and remanded.

    (3) Most incredulously, the FBI frequently patrolled the plaintiff's apartment complex and harassed neighbors, friends, and the staff inquiring if any of them saw the plaintiff in an attempt to have him remanded. They purposefully and maliciously sought his remand from the day he was released and have ruthlessly pursued that end above all else.

4. Summary: The release condition banning the plaintiff from the entire internet and all electronic devices is unconstitutional. The judge's ruling was vague in that it did not ban third parties from using the internet, and the plaintiff's cousin's use of the internet did not violate the court's order nor was it a malicious attempt to circumvent the judge's order since both individuals sought out pretrial services to ensure procedure was followed.

    a. —Arguments from A— (same bail hearing procedural violations)

    b. —Arguments from B— (unconstitutional release conditions)

    c. Statute requires clear and convincing evidence of violation

    d. Statute requires revocation only if no possible release conditions exist

    e. Plaintiff made every honest effort to abide by Court order

    f. Ergo, not possible that no release conditions exist

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

D. Pretrial incarceration as currently implemented is illegal as it violates The Bail Reform Act of 1984 and the US v. Salerno Supreme Court decision, unconstitutional as it violates the 1st, 2nd, 4th, 5th, 6th and 8th amendments, and inhumane as it immorally punishes those accused of a crime through indefinite incarceration and psychological torture where life, liberty, and property are forfeit in the most incredulously un-American and unjust process imaginable

1. The current implementation of pretrial ~~detention~~ incarceration violates US v. Salerno

   a. In arguing for the constitutionality of the Bail Reform Act and pretrial detention, the Supreme Court held that one of the reasons pretrial detention was constitutional was *"the maximum length of detention is limited by the speedy trial act."* In reality, this is not true at all as each court appearance ends with the judge overruling the defendant's right to a speedy trial thereby rendering this argument inert and long-term, indefinite incarceration not only possible but the standard. Many inmates spend 2, 3, 4+ years in federal prison as they fight their case—this was not what the Supreme Court legalized nor the interpreted legislative intent and thus the current implementation of pretrial incarceration is illegal. In fact, Salerno specifically stated that it was possible despite their ruling that a specific instance of pretrial detention could be unconstitutional if indefinite:

*"We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."* (Salerno, p. 755).

   (1) The invocation of a speedy trial is not always realistic as with the plaintiff's case where there are petabytes of data that need to be analyzed. If the plaintiff asks for a speedy trial without review of all discovery then exculpatory or important information could be missed. The government has a major advantage in the money, personnel, and access to discovery

   (2) The federal prosecutor slow rolls discovery; in the plaintiff's case the prosecutors held on to evidence for over a year and released all the evidence at the discovery deadline. Why turn over discovery at a reasonable time when you have the defendant enslaved and tortured?

   (3) There are also many events that arise outside of a defendant's control—for example in the plaintiff's case, he had an attorney leave his firm, the plaintiff was banned from working and unable to continue to pay his attorneys, he was scammed while in federal prison out of hundreds of thousands of dollars, his other attorney(s) failed to get cleared to work on the classified discovery, etc.

   (4) Plaintiff did not see unclassified discovery for 9 months in his case

   (5) Plaintiff did not see classified discovery for 12 months in his case

   (6) Plaintiff did not receive most discovery for 16 months in his case

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

(7) USG literally has tens of thousands of employees, millions of dollars, and several federal agencies to dedicate to discovery review—the plaintiff has one attorney and one paralegal; is this fair?

(8) Therefore, since there is no longer any time limit or serious constraint to time spent incarcerated for the defendant then the current implementation of pretrial incarceration is unconstitutional. Often times the defendant can even spend as much time or more than the guidelines for the crime. There are too many unknowns and too many events outside the control of the defendant, and even the court, to limit the time the defendant languishes in federal prison. In fact, almost nothing at all was accomplished in the plaintiff's case for a year—to date, there is not even a motions schedule set yet. How long must the plaintiff endure torture before he even gets his trial?

b. Permissible regulation vs. impermissible punishment: 18 U.S.C. § 3142 is used as an excuse to send those legally presumed innocent to federal prison. Today, there is NO DIFFERENCE between pretrial detention for the legally innocent and federal incarceration for the legally guilty; therefore the Bail Reform Act is applied illegally as it is used to punish the accused.

*"... The majority concludes that the Act is a regulatory, rather than a punitive, measure. The ease with which the conclusion is reached suggests the worthlessness of the achievement. The major premise is that*

*[u]nless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]'.*

*Ante at 747 (citations omitted). The majority finds that 'Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals,' but instead was pursuing the 'legitimate regulatory goal' of 'preventing danger to the community'. Ibid. Concluding that pretrial detention is not an excessive solution to the problem of preventing danger to the community, the majority thus finds that no substantive element of the guarantee of due process invalidates the statute.*

*This argument does not demonstrate the conclusion it purports to justify. Let us apply the majority's reasoning to a similar, hypothetical case. After investigation, Congress determines (not unrealistically) that a large proportion of violent crime is perpetrated by persons who are unemployed. It also determines, equally reasonably, that much violent crime is committed at night. From amongst the panoply of 'potential solutions', Congress chooses a statute which permits, after judicial proceedings, the imposition of a dusk-to-dawn curfew on anyone who is unemployed. Since this is not a measure enacted for the purpose of*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*punishing the unemployed, and since the majority finds that preventing danger to the community is a legitimate regulatory goal, the curfew statute would, according to the majority's analysis, be a mere 'regulatory' detention statute, entirely compatible with the substantive components of the Due Process Clause.*

*The absurdity of this conclusion arises, of course, from the majority's cramped concept of substantive due process. The majority proceeds as though the only substantive right protected by the Due Process Clause is a right to be free from punishment before conviction. The majority's technique for infringing this right is simple: merely redefine any measure which is claimed to be punishment as "regulation", and, magically, the Constitution no longer prohibits its imposition." (US v. Salerno 481 US 739, 759-760 (1987) Marshall, J., dissenting).*

How has pretrial ~~detention~~ incarceration worked in practice, today, 30 years after the ruling?

(1) "Detainees must be housed apart from convicts"—the plaintiff is at the Metropolitan Correctional Center (Manhattan's Guantanamo) housed with convicted felons. Strangely, the federal government believes that as long as all the convicted felons are on one unit of the same federal prison and pretrial inmates are literally across the hall on the same floor then this is satisfied. Does that sound right? Should convicted felons and pretrial inmates be housed at the SAME federal prison? All this signifies is that the BOP and federal government treat convicted felons and pretrial inmates as if they were the same thing; even though convicted felons are at the facility to be punished, pretrial inmates are at the SAME facility and experience the exact same livelihood and yet, the same treatment is NOT punishment for pretrial inmates? How can this be? So, as long as we call it different things for pretrial inmates and convicts, both can be SENTENCED to the exact same PUNISHMENT—federal prison.

(2) *"The government, however, has never argued that pretrial detention could be upheld if it were 'punishment'"*—the government addressed this predicament through double-speak and redefining "punishment" as "detention"—once you say, "oh, we aren't punishing anyone, just detaining them to prevent future crime", then it somehow becomes legal. This is nothing but self-delusions and 'alternate facts' that the federal courts use to fool themselves into believing that they are not raping the Constitution (they are). This IS punishment and any contention of this CLEAR FACT is simply denial. I offer the federal judiciary to spend a night in "detention" and then see if they still believe their bullshit. The plaintiff is at a maximum security federal prison under the Federal Bureau of PRISONS. The plaintiff has a Federal INMATE number. When the plaintiff uses the illegally wiretapped phones, the recipient is

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

notified that the call is from an INMATE at a FEDERAL PRISON. How can this be anything BUT punishment? Prison is, by definition, PUNISHMENT. Let's define some key terms: Prison—A place or state of CONFINEMENT especially for CRIMINALS; Prisoner—A person DEPRIVED of liberty. The plaintiff is a federal prisoner along with all other convicted felons. There is no distinction at all from federal prisoners who are pretrial and who are convicted. The "cadre", who is a convicted felon, actually has MORE rights, privileges, and amenities such as increased visit time, recreation time, the ability to travel outside of prison, no cages to be locked inside, etc. So, in actuality pretrial inmates suffer the WORST prison conditions. In fact, the prison conditions at detention centers are so poor that medium, low, and minimum federal prisons have significantly increased treatment and amenities that pretrial inmates quickly plead guilty so they can be transferred out of the pretrial detention hellhole and into a reasonable and more humane facility (albeit not THAT much more humane). In order for a facility to even by considered not punishment, it must be more tolerable and have better conditions than the lowest security federal prison. Period. Detention centers must be as close to liberty as possible to avoid punishment. IF the intent is truly just to prevent some future crime then there is no need for prison at all. Detention centers must be hotels with internet access, the ability to walk around the facility freely and to go outside. You must be able to have as many visits and visitors as you want and essentially possess every single liberty possible EXCEPT the ability to leave the facility. THAT is detention. If, truly, the legislative intent was to safeguard the community or individuals in the community then it should be sufficient to merely monitor an individual's movements; or at MOST the resort where PEOPLE, accused people not federal prisoners, can live and be happy—or at least content. Indeed, this would motivate the government to hurry cases along instead of drag them out forever to torture pretrial inmates. People's lives and livelihood must be as minimally impacted as possible. Yet, the government has done the exact opposite and turned detention into incarceration at a federal prison with convicted, federal prisoners run by the Bureau of Prisons. So I ask again, how is this not punishment? When it quacks like a duck, when it waddles like a duck, it's a duck! No deceptive double-speak can turn what pretrial inmates endure each and every day into anything but torturous punishment. Pretrial inmates are shackled from head-to-toe anytime they are moved and treated like criminals. The corrections officers even remind pretrial inmates that they are there for punishment; So, pretrial inmates are housed in a maximum security prison administered by the Federal Bureau of Prisons with less rights, privileges, and amenities than convicted prisoners serving sentence in

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

medium, low, and minimum security prisons—where the inmates are there specifically to be punished, and yet, the pretrial inmate is there NOT to be punished? *"Contradictions do not exist. Whenever you think that you are facing a contradiction, check your premises. You will find that one of them is wrong."* Indeed it is a logical impossibility that pretrial inmates co-exist with convicted felons and experience the same or worse liberty constraints, but pretrial inmates are merely "detained" and convicted felons "punished". If detention is not punishment then what's the difference between detention and punishment? Nothing. There is literally no difference. To everyone in federal prison it is abundantly clear that you are guilty until proven innocent. Only the naïve public still believes a presumption of innocence or justice still exists in America—until they too are picked off by the Police State and learn this horrible truth: Detention is punishment.

(3) Federal prison for pretrial inmates is not merely punishment. We punish our kids by placing them in timeout, taking their access to their phones, computers, or internet; by grounding them and restricting their liberty. The government has done this to pretrial inmates, but so much more (yet this adult version is not punishment?). Pretrial incarceration violates international law as well as the 8th amendment against cruel and unusual punishment: The Federal Detention Center is the WORST kind of psychological warfare imaginable as the State utilizes the unconscionable conditions of torture to exert maximum pressure to coerce quick guilty pleas. Most pretrial inmates are placed in 70ft.$^2$ bathrooms for two that consist of metal bunk beds, a metal desk and slide-out stool, lockers, toilet, sink, plastic mirror, and a small, barred window. The toilets and sinks are frequently broken, partially functional, and leaky. The cot "mattresses" are small and frequently cut in half—pretrial inmates are given a single bedsheet and blanket as the BOP blast the AC all day and night to subject them to the extreme cold. There are limited cleaning supplies which pretrial inmates must purchase such as soap and toilet paper as the tiers and prisons themselves are coated in bacteria, specifically staphylococcus that runs rampant along with hepatitis C. The few showers for the unit of 96 are broken with no shower heads, visible black mold, and an overall disgusting state. Ineffective ventilation causes unsafe, contaminated air. Pretrial inmates are forced to live in the 1800s—there's no modern technology whatsoever. They wash their clothes in the sinks or showers, use antiquated typewriters and pen and pad; there are no microwaves, ovens, or even first aid. Basic things most people take for granted are banned like pillows, belts, shoestrings, phones, and all electronics. Other basic things you take for granted are missing or broken—no toilet seats or lids, no real razors, no appliances including refrigerators (though you technically live in one). Pretrial inmates

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

are locked inside their cages for at least 12 hours each day where they do periodic standing counts and inspections—oh are you sitting and writing or standing on a chair during standing count? NEI! The Nazis take great pleasure in their command over human life and will make demands just to see the monkeys dance. 24-hour full lockdowns are commonplace and can occur for any reason from fights, BOP parties, or the cutoff of all plumbing—in these situations there is no running water most of the day—no way to flush a toilet all day long as feces just sit and accumulate in the bowl all day (or try holding it). Additionally, on those days the food is frozen solid and expired—meats from decades ago that is discolored and have foreign growth. On normal days the food is high in sodium, meager, and inedible; this low quality, disgusting food would be illegal to feed your dog. Pretrial inmates often lose weight unless you shell out money you can't afford for commissary; pretrial inmates must purchase this overpriced, even-higher-sodium and unhealthy commissary just to survive. Aside from these inhumane conditions, most pretrial inmates are taken outside to the roof anywhere between 0-3 hours per week for a maximum of 1 hour; permitted 1, 1 hour visit of up-to 3 people per week; 5 hours of monitored, expensive phone use per month that can only be utilized in 15-minute chunks per hour; and TRULINCS restricted text-only email access to family for 5 cents per minute. The phone and email systems are all recorded to use against the inmate in court—there is no privacy or 4th amendment permitted to those accused of a crime. There is also limited access, 1-2 hours per week, to go to the law library and review discovery. Worst of all, there is rarely any staff available in the units and none who can provide assistance. There is also limited to no healthcare—no regular dental cleaning or health checkups. Most people are missing teeth and unable to get care. There is a single government doctor with thousands of inmates and no care or oversight. Nothing—detention centers try to push all health costs to the designated prisons so those who want to fight their case in pretrial are punished with literally no healthcare. What about psychology? Most days pretrial inmates simply worry. There is nothing to do but worry, anxious and depressed—not only for yourself, but loved ones who are just as helpless and hurt by the loss of your liberty. The vast majority of inmates have children who are confused why their father doesn't come home; was it something they did? Does daddy not love them anymore? Who is going to teach them and play catch? Truly, the devastating torture of pretrial detention extends in every direction and decimates all family and friends in its wake. Pretrial inmates endure endless torture each and every day. Certainly, they *feel* punished.

(4) Now what about pretrial detention under Special Administrative Measures (SAMs)? SAMs is a secret process by which the Attorney General of the

United States of America orders the BOP to torture a particular inmate. The plaintiff spends 24 hours a day, 7 days a week in his cage the size of a parking space. There is no mirror like in normal cages, there is no hot water like in normal cages, and the cage windows are all blacked out—specifically to prevent the inmate from looking outside, which there is no reason except to purposefully punish and torture him. The antiquated technology such as typewriters, pen, and pad? All banned—the SAMs inmate cannot possess a pen to write or a notebook to write in. Roof recreation 0-3 times per week? Never for SAMs. The commissary so you can eat and survive? Restricted as punishment for SAMs. A visit each week? 1 per month—plus the visit is recorded and will end if anything is said that displeases or disparages the FBI. 5 hours of phone use per month? 30 minutes with the same FBI restriction. TRULINCS email access? No, not even for your attorney. Speaking of which, no contact attorney visits for SAMs inmates—no exchange of documents with your attorney (you cannot write anyway). 1-2 hours per week for law library access and discovery review? Never for SAMs. You cannot use the library as punishment. You cannot view your discovery or assist on your own case as punishment. Healthcare? Can't get less than zero; If you do a hunger strike they will come up and force a feeding tube down your throat—if that counts. Additional torture is sleep deprivation: 24-hour blindingly bright lights to torture you, freezing cold air and no heat to torture you, and noise all night long. The religious services you could attend before? The classes you could teach? The attempts at companionship? Banned. In fact, the keys to your cage are held by the lieutenant who isn't always on the floor—and in case of any emergency or catastrophe, SAMs inmates are sentenced to die. This is the very definition of cruel and unusual punishment—torture. True, the BOP does not actually waterboard anyone—but they aren't trying to get information out of pretrial inmates, just make them suffer. The Federal Terrorists have perfected torture and terrorism over the years—waterboarding is child's play compared with the malevolent system they've constructed.

(5) Psychological warfare, helplessness and inhumanity—Rehnquist and the Supreme Court can twist and manipulate words and argue until they're blue in the face—they can convince themselves that this is justice, that this is legal, "permissible regulation", but it's nothing more than self-denial. The plaintiff has never been so severely limited and all liberty taken from him so easily. The effortless decision and order from a judge to deprive the plaintiff from every single liberty—is truly devastating and painful each and every day of his life. Try to tell him and others that this isn't punishment—don't lie to yourselves, this is diabolical; there is no greater evil a government can impose on its people than indefinite incarceration, torture, and murder. The plaintiff is

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

an innocent man; one of countless innocent men punished each and every day for crime(s) never committed. Yet, he is punished all the same as he has been accused—which is sufficient in America to bestow infinite torture; it is legal in America to torture a man accused by the government. It's a daunting task for an innocent man to prove his innocence in America. The truth and facts don't matter as the prosecutors cherry-pick, manipulate data, fabricate evidence, and outright lie. They don't even need actual proof anymore, but instead rely on coercion of convicted felons—you need only sell your soul to the devil and testify to whatever the prosecutor demands in exchange for your life. Prosecutors are soulless, despicable, ruthless demons who care of nothing and no one except their own political ambitions and are ready and willing to destroy innocent lives for recognition and personal gain that may lead to their goal. Can such a broken system ever actually be fair or just? How can the plaintiff properly defend himself from within federal prison, denied every access and resource that the government is granted? The government gets Palantir and big data analytics to evaluate massive amounts of data quickly— the plaintiff doesn't even get the internet, computer, or a phone. The plaintiff did not even get the lawyers that he interviewed and picked to represent him. No, since he was locked away and presumed guilty at the point of a gun from the start of this entire process, he was banned from working—banned from the most American founding principle and the right to the fruits of his own labor. Without working, he could no longer afford to pay his attorneys—nor his apartment or anything else for that matter. Just as it is unjust and illogical to put a man in prison for debts he cannot pay, similarly locking a man in prison at the onset of criminal proceedings only ensures his fate. Is any of this fair? No, it's clear why the government wins 99% of all cases—through tactful guileful coercion and a legislated handicap. Nowhere else in government are they so efficient except when it comes to oppression: The United States government can't deliver mail accurately and efficiently, it can't balance a budget, manage a project without going over budget, run a Navy without ships colliding, determine if Suddam really has WMDs, run healthcare exchanges, find Zalwahari, keep drugs out of prisons, but the United States government can achieve plea deals and correctly arrest and run criminal investigations at 99% efficiency? Huh? Does that sound right to you? It's abundantly clear to all who have faced off against the ruthless demons of this diabolical system. Indeed, the government is granted an extreme handicap; the defendant, shackled, is mortally impaled by a knife and then paraded out before the people in armor to feign fairness and disguise the incredulous lopsided battle—the façade that is American justice. It's David v. Goliath where David

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

is crushed every time but that one shot in a million. This hopeless realization is what coerces so many into pleading guilty—the innocent included.

(6) These "harsh conditions" are recognized by the courts as is MCC as "Manhattan's Guantanamo"—Judges routinely if not always, downward depart prisoners who have had to endure MCC; Months or years of a defendant's sentence is subtracted for endurance of these harsh, unconscionable, and illegal conditions. Thus, the justice system itself does legally recognize MCC as a federal prison with conditions far worse than most prisons.

(7) Inmates' life is forfeit in federal prison. Should a natural disaster, fire, or something else occur inmates will be left to die in their prison cell. The officers are not trained to assist prisoners and instead are directed to abandon them to their deaths—there are no fire drills, no fire escapes, nothing but solid concrete. An impenetrable federal prison that's impossible to escape—even in cases of emergency. Additionally, when taken from the facility the corrections officers who chain and escort prisoners are authorized to use deadly force against the prisoners if they attempt to flee—truly, the BOP does not consider pretrial inmates human beings nor anything but a federal prisoner for them to torment and punish.

(8) Finally, the worst part, legally, is the inability for the plaintiff to meaningfully contribute to his defense from prison—exactly what the Federal Terrorists want. They don't want anyone to contribute and challenge them. The plaintiff is not even permitted to write or review his discovery! The most important and powerful tool, the internet and computing, is denied to the people who need it most. The plaintiff is constrained while the government has unlimited resources at its disposal. The plaintiff is forced to trust his entire life to a stranger and pray they care as much as he does about his life—they can't. The plaintiff is entirely ineffective in his own defense as he is illegally punished for allegations legally presumed to be untrue—but the punishment itself limits him in such a way as to all but guarantee failure at trial.

c. The Supreme Court ruled in US v. Salerno that pretrial detention was not facially unconstitutional as it saw certain cases where such detention could be constitutional provided "numerous safeguards" existed. To that end, the court ruled *"… the Act carefully limits the circumstances under which detention may be sought to the most serious of crimes, the arrestee is entitled to a prompt hearing, the maximum length of detention is limited by the Speedy Trial Act, and detainees must be housed apart from convicts. Thus, the Act constitutes permissible regulation, rather than impermissible punishment"* (Salerno, p. 740-741). The current implementation of pretrial detention in 2019 is drastically different from the vision of Congress and interpretation of the Supreme Court in 1987—pretrial

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

detention is prolonged and no longer limited by the Speedy Trial Act since in practice the rights of the accused are waived in every court appearance and the government is never pressed to turn over discovery quickly, but rather waits months and even years before full disclosure; there is no separate housing or distinction among convicted felons; and finally the inhumanely harsh conditions are inherently worse than convicted felons housed in low security federal prisons. The major issue is almost certainly the management of pretrial detention by the Federal Bureau of Prisons—whose primary job is to punish; there will almost certainly never exist any scenario where a government bureau charged primarily with punishment can effectively "detain" individuals and thus pretrial detention becomes pretrial incarceration. The courts must stop hiding behind this notion of "detention" and "regulatory interest" as there is no doubt pretrial incarceration is punishment; there is no scenario in which convicted felons serving their sentence at a minimum security camp should have better living conditions and amenities than pretrial inmates who have not be convicted. Hence, it logically follows that punishment must always exist unless pretrial inmates receive more liberty and less harsh conditions than the lowest security prison designed to punish.

2. Current implementation of pretrial detention violates the Constitution across the board—1st, 2nd, 4th, 5th, 6th, 8th amendments, and is an abomination to justice. Permissible regulation morphs into impermissible punishment as liberties that should be retained and could easily exist in an alternate system are unlawfully denied. Once again, the fundamental problem rests with the Bureau of Prisons (and State equivalents) as they attempt to apply the same rules and liberty restrictions to sentenced inmates and pretrial inmates where there should be a stark distinction. *"We intimate no view on the validity of any aspects of the Act that are not relevant to respondent's case. Nor have respondents claimed that the Act is unconstitutional because of the way it was applied to the particular facts of their case." (Salerno, p. 755).* Indeed, the particular facts of the plaintiff's case render the implementation of pretrial detention unconstitutional.

   a.  1st amendment violated by current implementation of pretrial detention:

      (1) Freedom of Speech—There is no freedom of speech while incarcerated behind bars. You are restricted from calling and emailing people based on the BOP rules and are only permitted 5 hours (30 minutes for SAMs) of phone calls per month as well as severe restrictions on email (banned for SAMs). You are limited to 1, 1-hour visit per week (per MONTH for SAMs). SAMs inmates are also subjected to immediate cancellation of their calls and visits if what is said displeases the government. You are completely forbidden from internet access and social media in direct violation of Packingham vs. North Carolina. Any exercise of free speech to a corrections officer or failure to obey any commands are met with punishment.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    (2) Freedom of Religion—SAMs inmates are directly banned from practicing their religion or congregating. Religious services take place and SAMs inmates cannot partake.

    (3) Freedom of the Press—you cannot publish anything from prison. All correspondence is carefully reviewed and meeting with the press is banned by the prison. SAMs inmates cannot publish articles or books and are banned from communicating with publishers. SAMs inmates are also banned from writing literature, and, in the plaintiff's case, the FBI has directly confiscated and deleted all literature that it found displeasing.

    (4) Freedom to peaceably assemble—inmates cannot assemble in prison. Any congregation of large groups is broken up. The plaintiff can't even leave his cage to assemble because of SAMs.

    (5) The first amendment to the Constitution is non-existent in federal prison as all rights are denied as if pretrial inmates have already been convicted of a crime—as punishment. All of these rights can easily be granted, but the BOP simply chooses to punish.

b. The 2nd amendment is clearly violated by incarceration as inmates are banned from accessing legally-owned guns. The 2nd amendment does NOT have an exemption for those accused of a crime.

c. 4th amendment—All inmates are strip searched in a most humiliating manner everywhere they go: told to strip off all clothes, stand nude in front of multiple corrections officers, show the bottom of your feet, open your mouth and show the inside; and finally grasp your scrotum, turn around, squat, and cough—there is no greater feeling of violation than the regular prison strip search. Calls and visits are recorded and monitored without a search warrant—and then used against you in court. Personal belongings can be searched and seized for any reason without probable cause. Inmates are forced to give blood and urine samples for drug tests. Pretrial inmates have no 4th amendment rights.

d. 5th amendment—Violation of the Due Process Clause as the presumption of innocence is denied though indefinite pretrial incarceration and punishment as a slave owned by the federal Bureau of Prisons and a **TOTAL LOSS** of life, liberty, and property without due process.

    (1) Life is forfeit—In the event of a natural disaster, pretrial inmates will be left to die. If the plaintiff is later found to be innocent then that act of letting him burn to death is a clear 5th amendment violation.

    (2) Assume not. Assume that pretrial detention, as implemented, does NOT violate due process. You are detained pretrial and are denied all constitutional rights as detailed here due to the government's interest in public safety. You are denied medical and dental care you would have normally received; you lose money because you cannot work, education because you cannot attend

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

any schools or take an online class or even stay updated in your ever-changing field of expertise; You lose friends and relationships wither and die as indefinite incarceration destroys your precious life in almost every way. Your reputation, finances, and social life lay in ruin. A jury of your peers then finds you innocent of the charges and you are set free. For what crime did you serve all those years in federal prison and suffer such catastrophic losses? Surely you could not be a danger as you did not even commit the crime—you were declared innocent. Yet, your career is irreparably harmed—your skill-set has now expired and you can't afford the continuing education to update your knowledge, colleagues and rivals have now gained years of experience over you, your finances will never allow you to retire anymore, etc. No indemnification can give you back these substantial losses incurred let alone the torture suffered and psychological impact while incarcerated. Alas, you were found to be INNOCENT therefore there is no valid punishment or due process to deprive you of life, liberty or property—but you WERE clearly deprived of all three, therefore contradiction. Pretrial incarceration must be incompatible with due process.

(3) Procedural Due Process—is the current implementation of the deprivation of life, liberty, and property fair and legal?

*"Section 3142(f) provides the arrestee with a number of procedural safeguards. He may request the presence of counsel at the hearing, he may testify and present witnesses on his behalf, as well as proffer evidence, and he may cross-examine other witnesses appearing at the hearing. If the judicial officer finds that no conditions of pretrial release can reasonably assure the safety of other persons and the community, he must state his findings of fact in writing, 3142(i), and support his conclusions with 'clear and convincing evidence', 3142(f)." (Salerno, p. 741).*

But at the plaintiff's first and second bail hearing—how was he to prepare tech witnesses? How could they testify without access to the machines or data? They would need time to prepare—the government had 6 months to prepare at the detention hearing and the plaintiff had zero time. Literally, the plaintiff was arrested in the dead of night and brought before the magistrate in chains without warning, no heads-up, and certainly no preparation time. The prosecutor turned over no evidence as the plaintiff had not yet been indicted— so the plaintiff could not even review any of the evidence! There is no fairness here. No impartiality. No due process. The plaintiff could not testify or present witnesses as required by law because he had no time to prepare, find witnesses, or review the evidence presented against him. The bail hearing is initiated once the government is ready so they have all the time in the world to prepare and practice. The plaintiff could not proffer evidence as he could not review any evidence against him—imagine your shock and surprise after an

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

arrest for something you had no knowledge and did not do. The one thing the plaintiff *did* proffer—his successful polygraph to rebut the alleged chats was ignored because the government did not have them; the plaintiff had no time or power to subpoena for the evidence in his favor. The magistrate did not specify or articulate the plaintiff's alleged danger and failed to support his conclusion of detention with a written finding of fact. In reality, the detention hearing was a full trial on day one of the plaintiff's arrest where the government had unlimited time to prepare, and the plaintiff had no time, and was not entitled to any of the evidence against him. It was only much later that the plaintiff's team discovered the prosecutor lied and misled the court about the timeline of events and the FBI agent lied, cherry-picked, and presented manipulated evidence in the complaint. How could the plaintiff possibly defend himself? How could he possibly defend something that he could not view—only the prosecutor could proffer and submit evidence. Furthermore, the entire determination of the plaintiff's guilt or innocence was left to ONE judge. What happens when the judge is wrong? What happens when the judge doesn't properly predict the future? What happens when the plaintiff is proven innocent—thus, there never could have been any danger? What success rate is acceptable, 90%? Do we accept sending 10% of the accused, who are innocent, to federal prison? The harsh conditions may coerce them into pleading guilty—is that due process? 95%? What rate of sending innocent people to indefinite federal prison do we accept as society? What rate is acceptable under the Due Process Clause? Clearly, judges are not infallible as they are human and therefore mistakes are bound to happen and people wrongfully found dangerous so, what rate is acceptable? Why even risk sending one innocent man to indefinite federal prison for a crime he didn't commit? Isn't this why we have a presumption of innocence? Isn't this why we have trials? This is why we rely on juries and multiple people to make such a life-changing decision: to take a man's entire liberty; only a ruling of guilt beyond all reasonable doubt can take ALL liberty. Indeed, the government MUST be ENTIRELY removed from the equation and the complete liberty deprivation left to the People and ONLY the People. The government was never intended to have the power to take a man's life, liberty, and property—this power was specifically reserved to the people. The government derives its power from us, the people, and we have carefully dictated the circumstances which the incredible power of government can take life, liberty, or property. This is due process. This is what is enshrined in our Constitution and charged to the courts—protections of the people from the government. We cannot ever allow the government to overrule the Constitution and create a new process to send a man to federal prison—no

JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

matter how "legislative" it sounds this is NEVER acceptable, this is NEVER due process. The Constitution is absolutely clear in the 5th and 6th amendments—only a jury has the power to convict and take all liberty from a man. This is due process. The wrongful imprisonment of an innocent man is such a travesty to justice that our founding fathers sought to ensure that only a group of people, the jury, can deprive a man of his entire life and only after a fair trial. Otherwise the wrongful incarceration of an innocent man is so catastrophic that there can be no dollar amount to properly indemnify—why else do we have a presumption of innocence? If we start having hearings and trials for the accused where a single judge possesses such raw power then we have lost sight of liberty, truly. Never did our founding fathers intend for a single man to wield such power to take all liberty and impose an indefinite federal prison sentence on the FIRST DAY of arrest—at the first accusation of a crime. This is not justice. This is tyranny. In fact, the detention hearing is the very antithesis of liberty and undermines the entire criminal justice system; it is facially unconstitutional and must be categorically rejected.

(4) Substantive due process that shocks the conscience and interferes with rights implicit in the concept of ordered liberty—A determination that the plaintiff is dangerous and likely to commit some unspecified, future crime, and his immediate incarceration in a maximum security federal prison and denial of the entirety of the Bill of Rights based solely on the accusation of a crime is entirely contradictory to the notion of ordered liberty and the presumption of innocence. So far the plaintiff has lost years of his life since the FBI's illegal raid—priceless time of his life; all this started when he was just 28 years old—in his prime and in a great position to grow his business into a mega corporation specializing in computer security securing both individual and corporate data, but he has lost all his clients and his LLC has failed and been dissolved. The plaintiff went from no debt, a luscious savings account, yearly maxing his 401(k) and Roth IRA, and an 800 credit score to maxed credit cards, debts to his eyeballs, no retirement, and the inevitability of bankruptcy. He has sold or lost all of his personal belongings in this world and doesn't have a single possession. Not a penny to his name. Broke and bankrupt.

(5) Aside from financial loses there are also severe human loses that violate substantive due process:

I've lost precious time with family and loved ones. I don't have the option to talk to my brothers, cousins, and extended family because I have to conserve my allocated 30 minutes of calling per month. I lost time mentoring and teaching my youngest brother programming as he attends college and most likely learns the wrong way to align braces and indent (the correct answer of tabs v. spaces is actually to use tabs but have the tabs insert spaces instead of \t). I'm also a huge

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

movie buff and I've already missed major blockbuster releases that I would have reserved in advance at Alamo Drafthouse and enjoyed with family and friends. I've missed weddings and other major life events that I can never get back. I've lost 40lbs as my health has severely deteriorated as has my parents' as the stress, frustration, and depression have affected more than just me. I receive no dental and minimal medical treatment for my congenital heart defect. I've lost all my hair and what remains is turning gray—and all before I turned 30. I don't get the right to hire and use my own lawyer because incarceration disrupted my steady income. I don't get to meet my attorney or attend religious services as I want. I don't have an opportunity at all to participate in my own defense. There is so much that I want to do that's forbidden. I'd like to wake up each day without hearing the jangling of keys and presentment of my substandard breakfast at 6:30AM through my cage's food slot. I'd like to choose want to wear each day, what to eat, where to go, what to do. I miss living life; it's a sharp pain in my chest. I miss fresh air, daily exercise; to wash my clothes in a real washer and dryer—oh to take a hot shower once more. To read in an open courtyard, walk my dog, to play League of Legends, Overwatch, or Eve… just to be with my family; to tutor my brother, hug my mother, and embrace my cousins, aunts, and uncles. There is so much we take for granted in life… Indefinite federal prison for a crime you did not commit truly gives you a new perspective on life and insight to who your real friends are and what's truly important in life. Oh, to live once more—to be free. What is the purpose of life but to live? To enjoy, appreciate, and stretch each moment as if it's your last; we know not the hour in which the Lord will come for us.

It's as if I'm already dead; America has murdered me and left me as a wraith with a provisional existence of unknown limit. The days are agonizingly long and painful, while the weeks, months, and years seem to fly by in my warped dimension of non-existence. My only solace is when I'm able to fall asleep and lose consciousness—where I dream of hot showers, food, and family; yet, the disappointment fills me when I awake and discover I still exist. I simply pray death take me from this hell on Earth. The Government has tortured and beaten me; I concede, 2 plus 2 is 5.

Indeed, I have lost all this and much, much more—and for what? Because the government I've served for years has decided that I'm guilty and detained me indefinitely without a trial. So, who is paying me these years of my life back once I'm found innocent? Who is paying me the BILLIONS of dollars in restitution and lost knowledge over these past years? Who is paying me my reputation back? Can you even put a price on life—on human years? What if Bill Gates' life was similarly destroyed by government malfeasance prior to Microsoft? Would he have been reimbursed the $80 Billion he's worth today? The problem is you can't ever know what someone would have accomplished with the time or what inventions would have been born. The United States judiciary takes the pessimistic and unethical approach and assumes people will commit crimes in the future, but I ask what good would I have done to society and the world if I hadn't been wrongfully tortured over these past years? Indeed, that is the risk of free will; the courts have sought to disrupt free will due to some unforeseen, ambiguously predicted, potential, future

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

crime. This pessimistic prediction of the future and future crimes underestimates people, the power of forgiveness, compassion, and free will: the ability for people to make their own decisions in life and face the consequences. The federal government was never endowed with the power of foresight, omnipotence, or the directive to overrule individual liberty on the whim of any perceived threat thought to maybe exist. The United States Government is not God no matter how much it tries to be. So I say again—who is responsible? Who is reimbursing me my life? This court? The prosecutor? The department of justice? The federal government? All of the above? This is exactly why the due process clause was so important to be included in the Bill of Rights—to protect the people from this incredulous injustice and loss of liberty. The government can never be allowed to deprive a man of his entire life, entire liberties, and entire Constitutional civil rights, indefinitely, due entirely to the ability of one man to predict the future—this is abhorrent to ordered liberty and shocks the conscience; only a jury through a fair trial has the ability to strip an individual of liberties and Constitutional rights. Otherwise the totalitarian loss of liberty is catastrophic and unforgiveable; this is the fascism and oppression our forefathers revolted against all those years ago. It rears its ugly head once more to test us—what will be the outcome? Will we allow America to become the very enemy we claim to fight?

     e.  6th amendment—SAMs deny the plaintiff effective assistance of counsel. The plaintiff cannot review discovery, write, and send case information to his attorney. Additionally, the government seizes his legal documents for use against him.

     f.  8th amendment—is pretrial detention punishment? Is the sky blue? It should be readily apparent that it is. Call it whatever you like: Detention, a Rehnquist vacation, voluntold fun, legislative prerogative, but at the end of the day it's federal pound-me-in-the-ass prison. Plain and simple. At the end of the day, the plaintiff has lost every liberty and complete control over his own life. This is the essence of punishment. Pretrial detention is the greatest atrocity of human rights violations in the country since Jim Crow, the fight for civil rights, and the internment of Japanese citizens during WW II (which, coincidentally, was also "legislative intent" for "security"). Can you imagine a more cruel and unusual punishment than PRE-trial incarceration in solitary confinement? Even those serving 30-year sentences know when they can be released, but not a pretrial inmate. You are impeded from assisting in your own defense and tortured psychologically as you have no idea at all how long it will take or when, if ever, you will breathe free air again. Contrary to what the Supreme Court or Congress intended through legislation this is absolute punishment; it is cruel and unusual punishment as it is indefinite punishment directed towards those not even convicted.

     g.  Pretrial inmates also lose the ability to vote once incarcerated in federal prison.

3.  Summary: The current implementation of pretrial ~~detention~~ incarceration is torturous punishment and entirely unconstitutional. Indeed, to every federal prisoner housed in maximum security prison that has yet to be tried, it is abundantly clear that you are

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

guilty until proven innocent. How can it logically be that a pretrial inmate has more restrictions, less liberty, and harsher conditions than those convicted of a crime serving their prison sentence? If detention can never be punishment then federal prison for the detained **MUST** be unconstitutional; federal prison is a mechanism used to punish—it **CANNOT** jointly be used to detain those legally presumed innocent. Only the naïve public, who have not experienced the travesty of the American justice system, still believe a presumption of innocence exists—until they are also picked off by the Federal Terrorists in this slow progression of targeted oppression through divide-and-conquer. This reality that America punishes the innocent and tortures those accused of a crime is an inconvenient truth.

   a.  Pretrial detention can never be used as punishment
   b.  Federal prison is punishment
   c.  Convicted felons are prisoners to be punished
   d.  Plaintiff is at a Federal prison (b) with Convicted felons (c)
   e.  Therefore, plaintiff is punished.

*"Honoring the presumption of innocence is often difficult; sometimes we must pay substantial social costs as a result of our commitment to the values we espouse. But at the end of the day, the presumption of innocence protects the innocent; the shortcuts we take with those whom we believe to be guilty injure only those wrongfully accused and, ultimately, ourselves."*
(US v. Salerno 481 US 739, 767 (1987) Marshall, J., dissenting)

   E.  The Bail Reform Act of 1984 is facially unconstitutional as violative of the 5th amendment's Due Process Clause for the creation of a presumption of danger contrary to the presumption of innocence and the substantive due process guarantee, the creation of a detention hearing immediately upon arrest where the arrestee is denied procedural due process, and the designation to the judiciary to determine an individual's future actions dependent upon the actions of past defendants in a shocking violation of BOTH substantive and procedural due process; Finally, the 8th amendment's excessive bail clause is violated as all defendants must be granted bail; cruel and unusual punishment violated as those not yet convicted are subject to federal incarceration, indefinitely.

*"This case brings before the Court for the first time a statute in which Congress declares that a person innocent of any crime may be jailed indefinitely, pending the trial of allegations which are legally presumed to be untrue, if the Government shows to the satisfaction of a judge that the accused is likely to commit crimes, unrelated to the pending charges, at any time in the future. Such statutes, consistent with the usages of tyranny and the excesses of what bitter experience teaches us to call the police state, have long been thought incompatible with the fundamental human rights protected by our Constitution. Today a majority of this Court holds otherwise. Its decision disregards basic principles of justice established centuries ago and enshrined beyond*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

the reach of government interference in the Bill of Rights." (US v. Salerno 481 US 739, 755-756 (1987) Marshall, J., dissenting)

It is time to finally right this wrong.

1. A detention hearing, or adversary hearing as described by 3142(f) necessitates a transfer of the burden of proof and presumption to the defense; the prosecutor proffers evidence that has been gathered for months or even years that the defense is not permitted to review or even capable of reviewing on the very day a defendant is arrested. In the vast majority of cases, the defendant is just assigned an attorney at arraignment and is clearly ill-prepared to fight the government when the attorney is barely notified of the case. Hence the defense is forced to concede the government and consent to detention in violation of procedural due process OR fight a one-sided battle without any evidence, experts, or witnesses in their favor—also violative of procedural due process. It's a lose-lose. In fact, there may be substantial evidence in the case which takes months to thoroughly process and ready a defense—but isn't this the purpose of a trial? A detention hearing is a mini-trial prosecuted on day one of a defendant's arrest where he must present evidence to prove he is not a danger or go directly to federal prison. How many defendants even fight bail on arrest? How many defendants go through the entire pre-trial and trial phase without ever asking for bail? Furthermore, the prosecutor not only doesn't have to turn over any evidence to the defendant at this point in the criminal proceedings, but as you will see in the plaintiff's case, the prosecutor may well hide and conceal evidence that vindicates the defendant until closer to trial if at all! Since it is ALWAYS the case that the government is prepared with evidence against the defendant, ALWAYS the case that the defense and defendant cannot reasonably access and analyze the evidence presented in the case nor uncover evidence for the defense, and entirely possible if not always the case that exonerating evidence for the defense may not be discovered until much later in the criminal proceedings where the defendant may well languish in federal prison UNTIL he has presented enough evidence to be released, which is the presumption of guilt by definition, then it is ALWAYS the case that such a detention hearing violates procedural due process and is therefore unconstitutional on its face. The only time a defendant is ready to argue against the government and present evidence and witnesses to testify on his behalf is at trial—hence no hearing to determine danger based on this same evidence in a defendant's case is ever constitutional as the only time "danger" could be litigated fairly is at trial!

   a. Any hearing such as 3142(f) in combination with the creation of a presumption of danger such as 3142(e)(3) is a direct repudiation of the presumption of innocence as the defendant is required to disprove evidence that the government presents against him or else be declared a danger and thrown in federal prison.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law" (Coffin v. United States 156 US 432, 453 (1895))*

*" Our society's belief, reinforced over the centuries, that all are innocent until the state has proved them to be guilty, like the companion principle that guilt must be proved beyond a reasonable doubt, is 'implicit in the concept of ordered liberty,' Palko v. Connecticut, 302 US 319, 325 (1937), and is established beyond legislative contravention in the Due Process Clause. See Estelle v. Williams, 425 US 501, 503 (1976); In re Winship, 397 US 358, 364 (1970). See also Taylor v. Kentucky, 436 US 478, 483 (1978); Kentucky v. Whorton, 441 US 786, 790 (1979) (Stewart, J., dissenting)"*

There can be no question that a presumption of innocence is the established law of the land so the creation of an initial hearing on arraignment where a defendant must rebut a presumption of danger in a trial where he is unprepared and outmatched in every possible way or face indefinite incarceration is the very antithesis of the presumption of innocence and reprehensible to the notion of justice.

    b.   *"Under the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination. Detainees have a right to counsel at the detention hearing. 18 USC 3142(f). They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. Ibid. The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. 3142(g). The government must prove its case by clear and convincing evidence. 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. 3142(i). The Act's review provisions, 3145(c) provide for immediate appellate review of the detention decision." (Salerno, p. 751-752).*

—Are any and of these safeguards even possible? The plaintiff had a slight advantage over most defendants because he already retained lawyers following the FBI's (illegal) raid on his apartment for the alleged unlawful dissemination of national defense information. However, any arrest 6 months later in August of 2017 for an alleged unrelated crime was a complete surprise and utter shock. The plaintiff was presented a complaint, but no way to adequately prepare, view the evidence, or have a technical expert or anything—the plaintiff was immediately thrust into a situation where he was accused of a non-violent, victimless crime that made him a danger to the community and a presumption for detention. The

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

government prepared for 6 months, and comfortably came out firing away with Google searches, IRC chats, encrypted containers in VMs, etc. How could anyone possibly mount a defense? The plaintiff had no ability to testify as he had no idea what the government was talking about. He had no evidence to present or proffer as he had just been kidnapped at the dead of night and was not even entitled to any discovery until AFTER an indictment. How could he offer anything without spending the same hours poring over evidence as the government? They had the full resources of the FBI, CIA, and US Attorney's office for 6 months while the plaintiff had only himself, his attorney, and one hour. Were they supposed to conjure up evidence and technical experts? Then, as described in A) the magistrate never stated the nature and the circumstances of the charges, the weight of the evidence, or specified the danger to the community. In fact, the one piece of evidence the plaintiff DID proffer regarding his security file and polygraphs was entirely ignored! The plaintiff lost as the magistrate judge ruled his defense team did not rebut the presumption of dangerousness. But, seriously, how can anyone fight allegations without ANY preparation or REVIEW of the materials presented? The plaintiff had no idea what the government claimed to have found—so of course they won. They SHOULD win every single time as the scale is tipped so far in their favor. Incredulously, the "likelihood of future dangerousness" is based on what, a prediction of behavior based on past defendants? How is this possibly due process? Any of this? How is this just, legal procedure? How is the decision of others relevant to the plaintiff? How can a judge predict the plaintiff's future after 30 minutes of listening to a one-sided trial? Next, in the second bail hearing a month later, the prosecutor CHANGED their entire argument! The plaintiff still wasn't entitled to the evidence because he hadn't been indicted, and of course the prosecutor did not give the defense a heads up that they were changing their argument. The plaintiff's weekend of preparation was based ONLY on the government's proffered evidence from the first bail hearing which they simply changed. This is not fair. This is not legal. This is not justice. Today, over a year later, the plaintiff has barely begun reviewing discovery, but the defense has already discovered enough evidence to show the prosecutor misled the court. Furthermore, the plaintiff has contributed substantial resources (his entire live savings), time, and effort trying to gain equal footing and the ability to assist in his own defense. These considerable resources, if directed towards the plaintiff's actual case would have resulted in its dismissal by now. No doubt, if instead of kidnapped and forced into federal prison by the State at the point of a gun on arrest, there would be no case. Why should a defendant have to fight so hard just to ascertain freedom before trial and the constitutional liberties that are supposedly inalienable? It's a mockery of justice.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    c. Thus the safeguards and protections that Rehnquist claims exist pursuant to 3142(f) are imaginary as the reality is simple: pretrial detention based upon a hearing where the defendant is presumed dangerous at the onset of the criminal process necessarily violates the presumption of innocence, procedural due process, and the 5th amendment, 3142(j) notwithstanding. The inclusion of 3142(j) which simply states that "Nothing in this section shall be construed as modifying or limiting the presumption of innocence" is simply an acknowledgement that Congress recognized the Act as unconstitutional and curiously attempted to hide it behind a statement that wouldn't be necessary unless the Act violated the presumption of innocence. It's like hiding behind a comment of "no offense" after you have just offended someone—no, regardless of your claimed "intentions" or attempts to feign constitutionality, the truth is self-evident. The double-speak of claiming something inherently illegal to be legal in the text of the law itself is Orwellian at its core—the unconscionable absurdity equaled only by its apparent dupe of America's highest court.

*"The essence of this case may be found, ironically enough, in a provision of the Act to which the majority does not refer. Title 18 U.S.C. 3142(j) (1982 ed., Supp. III) provides that '[n]othing in this section shall be construed as modifying or limiting the presumption of innocence.' But the very pith and purpose of this statute is an abhorrent limitation of the presumption of innocence. The majority's untenable conclusion that the present Act is constitutional arises from a specious denial of the role of the Bail Clause and the Due Process Clause in protecting the invaluable guarantee afforded by the presumption of innocence." (US v. Salerno 481 US 739, 762-763 (1987) Marshall, J., dissenting).*

    2. Any presumption of danger, on its own, is mutually exclusive, incompatible, and in direct opposition to a presumption of innocence. How can danger exist at all if an individual is presumed innocent? If the plaintiff is presumed innocent of a non-violent, victimless crime then from where does danger arise? The presumption of danger clearly overrode the plaintiff's presumption of innocence as the magistrate specifically stated that the presumption of danger was NOT rebutted and therefore the plaintiff was remanded into indefinite federal detention.

    a. No presumption of danger exists before or after a federal criminal case therefore it follows that the presumption of danger accompanies an accusation of a crime ONLY, and subsides once declared innocent; the government cannot continue to detain an individual declared innocent and therefore, a presumption of danger cannot legally apply to the innocent—innocence and "danger" are incompatible. So, if danger doesn't exist after the declaration of innocence by a jury then it necessarily follows that a presumption of INNOCENCE, where you are held to be INNOCENT, must have the same status as innocence, namely the lack of a presumption of danger.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

      (1) If innocent then not dangerous

      (2) Declared dangerous.

      (3) Therefore NOT innocent.

  b. Proof-by-Contradiction: Assume not. Assume danger can accompany a presumption of innocence. Thus, a presumption of danger would and could follow you after a verdict—so you could be legally detained after a jury finds you innocent and therefore, CONTRADICTION as this would be preposterous! Indeed, the presumption of danger that has held a defendant in federal prison through trial vanishes once a jury declares the defendant not-guilty.

  c. If a jury finds a defendant not guilty then how was he ever dangerous? Since the defendant was found innocent, he never committed the alleged crime. So, he certainly was not dangerous nor should he have been detained pretrial. Yet, a federal judge found him guilty PRE-TRIAL! This is the entire purpose of a trial—so that the People can consider the evidence and decide whether the defendant is innocent or guilty. A federal judge cannot predict the future, and certainly cannot determine guiltiness of a defendant BEFORE the defendant can ever review the evidence against him!

  d. The government's creation of a "presumption of danger" clearly decimates any presumption of innocence. As the plaintiff stood before the magistrate judge in utter disbelief on that first day he was ever accused of a crime, he was truly baffled as the judge told his lawyers that they did not adequately rebut the presumption of danger—thus the plaintiff must be detained in federal prison, incarcerated indefinitely until trial; whenever that may be. The plaintiff would be dragged into his "fair" trial by chains. This is clearly not the presumption of innocence. This is not justice. Yet, it seems the plaintiff was born into tyranny as the presumption of innocence died in 1987 and was replaced by the presumption of danger that has become the new law of the land; this presumption of danger contradicts liberty, due process, and fundamental American principles.

*"The statute now before us declares that persons who have been indicted may be detained if a judicial officer finds clear and convincing evidence that they pose a danger to individuals or to the community. The statute does not authorize the Government to imprison anyone it has evidence is dangerous; indictment is necessary. But let us suppose that a defendant is indicted and the Government shows by clear and convincing evidence that he is dangerous and should be detained pending trial, at which trial the defendant is acquitted. May the Government continue to hold the defendant in detention based upon its showing that he is dangerous? The answer cannot be yes for that would allow the Government to imprison someone for uncommitted crimes based upon "proof" not beyond a reasonable doubt. The result must therefore be that, once the indictment has failed, detention cannot continue. But our fundamental principles of justice declare that the defendant is as innocent on the day before his trial as he is on the morning after his acquittal. Under this statute, an untried indictment somehow acts to permit a detention,*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

based on other charges, which after an acquittal would be unconstitutional. ***The conclusion is INESCAPABLE that the indictment has been turned into evidence, if not that the defendant is guilty of the crime charged, then that, left to his own devices, he will soon be guilty of something else.*** *'If it suffices to accuse, what will become of the innocent?' Coffin v. United States, supra, at 455 (quoting Ammianus Marcellinus, Rerum Gestarum Libri Qui Supersunt, L. XVIII, c. 1, AD 359)" (US v. Salerno 481 US 739, 763-764 (1987) Marshall, J., dissenting)*

    e.  Without a presumption of danger, which has shown to be undeniably unconstitutional, there can be no presumption of detention or determination that no release conditions can ensure the community safety; in fact there can be NO pretrial detention at all.

3.  "Likeliness-of-future-crime" is pre-crime by definition. The movie is called "Minority Report", and the result is that not even the precogs who possess foresight can predict the future as the future is always in motion—so why do we think federal judges who are less gifted should be granted unilateral power to make the determination that pre-crime is likely and therefore detain an individual and subvert his constitutionally inalienable right of due process?

    a.  *"Congress hoped to give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person MAY POSE to others if released" (Salerno, p. 742).* This notion of danger determination based on a crime a person MAY POSE in the future, or may not, is sickening and contrary to the ideals of a free society—the judiciary should have refused the offering of the ring of power. *"The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. 18 USC 3142(f). Congress specifically found that these individuals are for more likely to be responsible for dangerous acts in the community after arrest." (Salerno, p. 750).* We have already seen Congress modify this "specific category of offenses" to include non-violent victimless crimes such as the plaintiff is accused—who's to say they won't continue its expansion? Such a designation is highly prejudicial as it groups all people and applies danger regardless of each situation therefore violating due process—any automatic designation of danger and subsequent recommendation of detention is based on past individuals and past defendants and not based on the plaintiff or his specifics. He is prejudiced and grouped illegally. *"There is nothing inherently unattainable about a prediction of future criminal activity." (US v. Schall, 467 US at 278).* What a striking and appalling statement. Any prediction of the future is unattainable by definition—especially for basing indefinite incarceration. Judges are supposed to judge based on the law, and sentence an individual based on his past actions, not generic future actions based on a group. Surely, a judge sentencing a man based on his determination of a defendant's future actions and future crimes violates due process and the very notion of justice. Yet, this is what judges are doing to individuals not yet convicted. This is

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

deplorable. How can a judge pass judgment on anyone's future based on present-day accusations not yet proven? The plaintiff is un-convicted. The plaintiff is an innocent man determined likely to commit some unknown, future crime. Punishing an ENTIRE group of people based on the actions of DIFFERENT INDIVIDUALS in the PAST is the definition of unjust. Just as we don't confiscate guns from all Americans because of the atrocities committed by those who abuse this right, we cannot confiscate liberty and free will from a subset of the accused because of the atrocities committed by those who abused this right in the past. Indeed, discriminating an entire group of people, even those accused of violent crimes, interferes with rights implicit in the concept of ordered liberty. What if Congress or the judiciary decided all black males accused of a crime must be detained due to statistics showing they are more likely to commit future crimes? This would surely shock the conscience—prejudicial treatment of ANY group is a slippery slope to oppression and fascism. Just because society may not like potentially-violent-criminals or statistics conclude a propensity for repeat-offense or potential violence does not mean they have any less rights under the Constitution.

*"It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people." (United States v. Rabinowitz, 339 US 56, 69 (1950) (Frankfurter, J., dissenting)).*

    b. The second circuit of appeals in 1986 was correct and the Supreme Court in 1987 was wrong, confirming yet again that the highest court in the land is not infallible:

*"Respondents appealed, contending that, to the extent that the Bail Reform Act permits pretrial detention on the ground that the arrestee is likely to commit future crimes, it is unconstitutional on its face. Over a dissent, the United States Court of Appeals for the Second Circuit agreed. 794 F.2d 64 (1986). Although the court agreed that pretrial detention could be imposed if the defendants were likely to intimidate witnesses or otherwise jeopardize the trial process, <u>it found '3142(e)'s authorization of pretrial detention [on the grounds of future dangerousness] repugnant to the concept of substantive due process</u>, which we believe prohibits the total deprivation of liberty simply as a means of preventing future crimes.' Id. at 71-72. The court concluded that the Government could not, consistent with due process, detain persons who had not been accused of any crime merely because they were thought to present a danger to the community. Id. At 72, quoting United States v. Melendez-Carrion, 790 F.2d 984, 1000-1001 (CA2 1986) (opinion of Newman, J.). It reasoned that our criminal law system holds persons accountable for past actions, not anticipated future actions. Although a court could detain an arrestee who threatened to flee before trial, such detention would be permissible because it would serve the basic objective of a criminal system—bringing the accused to trial. The court*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*distinguished our decision in Gerstein v. Pugh, 420 US 103 (1975), in which we upheld police detention pursuant to arrest. The court construed Gerstein as limiting such detention to the 'administrative steps incident to arrest.' 794 F.2d at 74, quoting Gerstein, supra, at 114. The Court of Appeals also found our decision in Schall v. Martin, 467 US 253 (1984), upholding postarrest, pretrial detention of juveniles, inapposite because juveniles have a lesser interest in liberty than do adults. The dissenting judge concluded that, on its face, the Bail Reform Act adequately balanced the Federal Government's compelling interest in public safety against the detainee's liberty interests." (Salerno, p. 744-745).*

Predicting the future is unrealistic and applying predictions based on the actions in the past of other individuals or the statistics of a group clearly violates both substantive and procedural due process as the court is essentially ignoring each individual circumstance and prejudicially punishing an individual for the actions of another and denying the individual free will. Allowing people to make their own decisions—either good or bad—is paramount in a free society. If we took the government's preventative response to disable people thought to commit a future crime and applied Kant's categorical imperative and universally detained or revoked all liberties that could potentially be abused or cause "danger" to the community then we would inevitably be left in a state of total loss, devoid of free will and humanity: Indeed we would be safe, but at what cost? Just as you can't keep your child in a bubble and prevent them from experiencing the world to "protect" them, neither can the government do this to its people. God answers prayers by giving people the opportunity to do good; free will is God's greatest gift to mankind.

4. Denial of bail is a flagrant violation of the 8th amendment which very simply states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." There is no list of exemptions for bail—no listing of reasons bail can be denied. It's ambiguous at best, and any ambiguity in contracts is always afforded the people. Our founding fathers intended the Constitution as a social contract that explicitly enumerated the only powers the people cede to the government where all else were reserved to the people. Any and all ambiguity must be granted in favor of the individual—Bail must ALWAYS be set, reasonably, for the accused to be released. The defendant must be granted the ability to fight his own case and the presumption of innocence which is tied to the excessive bail clause in the 8th amendment.

*"The logic of the majority's Eighth Amendment analysis is equally unsatisfactory. The Eighth Amendment, as the majority notes, states that '[e]xcessive bail shall not be required.' The majority then declares, as if it were undeniable, that: '[t]his Clause, of course, says nothing about whether bail shall be available at all.' Ante at 752. If excessive bail is imposed, the defendant stays in jail. The same result is achieved if bail is denied altogether. Whether the magistrate sets bail at $1 billion or refuses to set bail at all, the consequences are*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*indistinguishable. It would be mere sophistry to suggest that the Eighth Amendment protects against the former decision, and not the latter. Indeed, such a result would lead to the conclusion that there was no need for Congress to pass a preventive detention measure of any kind; every federal magistrate and district judge could simply refuse, despite the absence of any evidence of risk of flight or danger to the community, to set bail. This would be entirely constitutional, since, according to the majority, the Eighth amendment 'says nothing about whether bail shall be available at all."*

*But perhaps, the majority says, this manifest absurdity can be avoided. Perhaps the Bail Clause is addressed only to the Judiciary. '[W]e need not decide today,' the majority says,*

*whether the Excessive Bail Clause speaks at all to Congress' power to define the classes of criminal arrestees who shall be admitted to bail.*

*Ante at 754. The majority is correct that this question need not be decided today; it was decided long ago. Federal and state statutes which purport to accomplish what the Eighth Amendment forbids, such as imposing cruel and unusual punishments, may not stand. See, e.g., Trop v. Dulles, 356 US 86 (1958); Furman v. Georgia, 408 US 238 (1972). The text of the Amendment, which provides simply that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted,' provides absolutely no support for the majority's speculation that both courts and Congress are forbidden to inflict cruel and unusual punishments, while only the courts are forbidden to require excessive bail." (US v. Salerno 481 US 739, 760-761 (1987) Marshall, J., dissenting)*

*"Unless th[e] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning" (Stock v. Boyle, 342 US 1) (1951).*

    a. Furthermore, indefinite incarceration is cruel and unusual punishment. Plain and simple. What motivation does the prosecutor have to move your case along while you're sitting in federal prison already serving your sentence? How can you work to pay off debts and pay attorneys? What happens to your life, relationships, reputation, knowledge, etc? And when can you expect to return to your life? How can you even plan for anything? Aside from the torture and many of these issues already discussed in D.) the mere designation of indefinite incarceration and psychological torture along with the disastrous implications to every aspect of a defendant's life, there is no doubt that the Bail Reform Act of 1984 and the pretrial detention it creates is cruel and unusual punishment; Cruel for the indefinite, psychological, and destructive nature of total deprivation of liberty and unusual as it only applies to those not yet convicted of any crime.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

5. The coercive power of indefinite pretrial incarceration is a demonstrably cruel totalitarian tactic utilized by the State with tenacious ferocity; this combinatorial effect with plea deals and mandatory minimums results in the innocent pleading guilty or cooperating with the government in a desperate attempt to escape prolonged incarceration and indefinite torture.

   a. It is self-evident that those released on bail have a greater chance for success in their case than those denied bail, hence the 5th amendment's due process clause and the presumption of innocence are inextricably linked to the 8th amendment's excessive bail clause; denial of bail due to a single judge's determination of the possibility of future crime, a-la pre-crime, deprives an individual of the presumption of innocence. As the defendant languishes in the harsh, torturous confines of pretrial ~~detention~~ incarceration, he is much more susceptible to giving into the government's demands and pleading guilty regardless of actual guilt simply to escape the torment. This violation of due process in undeniably proven in a research paper published in 2016 by Will Dobiey, Jacob Goldinz, and Crystal Yang titled, "The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges" (See Appendix D).

*"This paper estimates the impact of being released before trial on criminal case outcome, future crime, formal sector employment, and the receipt of government benefits. **<u>We find that pre-trial release significantly decreases the probability of conviction, primarily through a decrease in guilty pleas.</u>** Pre-trial release mechanically increases pre-trial crime and failures to appear in court, but has <u>no detectable effect on FUTUTRE crime.</u> Finally, we find suggestive evidence that pre-trial release increases formal sector attachment both through an increase in formal sector employment and the receipt of tax- and employment-related government benefits. Many of the estimated effects are larger for defendants with no prior offenses in the past year and defendants employed in the year prior to bail. We argue that the results are consistent with (i) pre-trial release strengthening defendant's bargaining position during plea negotiations, and (ii) a criminal conviction lowering defendant's attachment to the formal labor markets."*

   (1) Thus, pre-trial incarceration has a direct effect on the innocent pleading guilty or at least coercive bargaining power over individuals by bullying prosecutors. The entire notion predicating the premise for the Bail Reform Act is also challenged—is there truly a heightened risk of danger to the community from those accused of a crime? How did Congress determine this and would it still be true today or is EVERY judge's detention based on future danger entirely wrong and without merit? How many would actually commit future crimes? How many innocent people are pleading guilty and how many people suffer every day in pretrial incarceration versus the effect of increased crime if pretrial incarceration ended? What's the long-term detrimental effect to

Case 1:19-cv-03346-CM   Document 2   Filed 04/12/19   Page 63 of 88

JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

families? Indeed, there can be no doubt of the ill-effect and perverse, coercive effect on defendants.

b. The coercive power of plea deals, confirmed in the 1970 Brady v. US decision plays a major role in the innocent pleading guilty when combined with the brutal torture of pretrial incarceration and mandatory minimums. Specifically, associate judge Bryan White wrote the following in the case opinion:

*"This is not to say that guilty plea convictions hold no hazards for the innocent, or that the methods of taking guilty pleas presently employed in this country are necessarily valid in all respect. This mode of conviction is no more fool proof than full trial to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or trial. We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves."*

Pretrial incarceration, as implemented today, clearly aides in coercion and therefore violates due process. When defendants suffer torturous conditions and are faced with limited communication with family and loved ones, the coerce incentive to quickly plead guilty and transfer to a less harsh facility (or be released) with more rights, privileges, and ability to see and hug your kids, is self-evident.

c. Coercive power of mandatory minimum sentences: Mandatory minimum sentences violate separation of powers between legislative and judicial branches as described by articles I and III, contributes in coercion for guilty pleas, and therefore violates the due process clause.

(1) The judiciary is charged with the trial of all crimes pursuant to Article III, Section 2, Clause 1. Congress' passage of laws requiring sentences of imprisonment at a minimum subverts judges and the judiciary altogether. The judge's primary job is to judge individuals. Based on an individual's actions, contribution to any crime(s), acceptance of responsibility, and countless other factors, the judge makes a sentencing determination. However, Congress has intervened and interfered to substantially impact performance of the judiciary; a judge cannot properly do his job—what if the specific circumstances would have led to a judge's determination that 3 years of prison were sufficient, but Congress mandated 15 years? Legally, a judge would be required to ignore his own years of experience and discretion and impart significant sentences. Congress' imposition of sentencing is well outside the power outlined in article I—they impose group sentencing across the board, but cannot possibly do this fairly as they have no information on each individual or specific case. Hence, in addition to violating separation of powers and the direct interference

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

of the judicial branch, mandatory minimums also violate due process because the difference in sentencing between what the judge wanted to impose and what Congress mandated resulted in loss of liberty without proper due process—the defendant and his specific circumstances and case were not lawfully reviewed. Why even have judges or the judiciary at all if Congress is going to interfere and legislate their job?

(2) The jury's job is to determine guilt or innocence so the judge can impose sentencing, but today the jury also passes sentences due to mandatory minimums. If a defendant is found guilty of a certain crime, then the law imposes sentence, hence, the jury now passes sentences through guilty verdicts. Most jurors don't know this. Most jurors are never told or are specifically prevented from knowing mandatory sentencing even exists. This violates due process because the jury's function has changed without the jury's knowledge—they must be instructed that in addition to the determination of innocence or guilt, they must also determine if the mandatory minimum is appropriate or excessive; if excessive then they must acquit. What if Congress hands down 15, 20, or 25+ year mandatory minimums? These effectively result in a death sentence and the jury MUST be told. Essentially, Congress has significantly complicated the criminal trial process. Without knowledge and jury instruction of jury nullification to acquit if the mandatory is too high then due process is clearly violated as the defendant's life and liberty are taken without the proper procedure. Congress can make recommendations to the judiciary, but Congress cannot legally dictate sentencing.

(3) The mandatory minimums make it extremely risky for defendants to go to trial—do you try trail, when, if convicted, you MUST go to jail for 10 years mandatory? Or do you plead guilty even if you're innocent? 5K1 letters and the prosecutor's ability to suspend mandatory minimums give them extraordinary leverage and coercive power over the defendants—the innocent always plead guilty and take 2-3 years in lieu of the risk of an entire decade. Risk management and basic statistical analysis indicate that the logical choice is to ALWAYS plead guilty and avoid the risk regardless of innocence, and this is exactly what counsel advises the defendant—in clear violation of due process and the entire concept of justice.

d. The coercive power of indefinite pretrial incarceration was utilized on day one of the passage of the Bail Reform Act of 1984 and its existence in US v. Salerno was apparent to at least one judge:

*"There is a connection between the peculiar facts of this case and the evident constitutional defects in the statute which the Court upholds today. Respondent Cafaro was originally*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*incarcerated for an indeterminate period at the request of the Government, which believed (or professed to believe) that his release imminently threatened the safety of the community. That threat apparently vanished, from the Government's point of view, when Cafaro agreed to act as a covert agent of the Government. There could be no more eloquent demonstration of the coercive power of authority to imprison upon prediction, or of the dangers which the almost inevitable abuses pose to the cherished liberties of a free society." (US v. Salerno 481 US 739, 766-767 (1987) Marshall, J., dissenting)*

(1) This is exactly what the government did to the plaintiff. The plaintiff was charged with a non-violent, victimless crime and subject to a presumption of detention. Even though the plaintiff had never been charged before with ANY crime and had worked for the government at the Central Intelligence Agency, the government knowingly lied and claimed the plaintiff was a danger to society. A danger, how? This was never explained—is he a danger because the government believes he will view illicit materials on a computer in the future? That hardly warrants the imposition of indefinite incarceration and the assertion that no conditions of release are possible—without explanation of the danger there can be no discussion of possible release conditions to quell the specific danger. The government used the broken bail system to incarcerate and coerce the plaintiff into a guilty plea by using his very freedom as the primary negotiating token; this is despicable, and certainly not justice.

6. Justice.

*"We have repeatedly held that the government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest. For example, in times of war or insurrection, when society's interest is at its peak, the Government may detain individuals whom the Government believes to be dangerous. See Ludecke v. Watkins, 335 US 160 (1948) (approving unreviewable executive power to detain enemy aliens in the time of war); Mover v. Peabody, 212 US 78, 84-85 (1909) (rejecting due process claim of individual jailed without probable cause by Governor in time of insurrection). Even outside the exigencies of war, we have found that sufficiently compelling governmental interests can justify detention of dangerous persons. Thus, we have found no absolute constitutional barrier of detention of potentially dangerous resident aliens pending deportation proceedings. Carlson v. Landon, 342 US 524, 537-542 (1952); Wong Wing v. United States, 163 US 228 (1896). We have also held that the government may detain mentally unstable individuals who present a danger to the public, Addington v. Texas, 441 US 418 (1979), and dangerous defendants who become incompetent to stand trial, Jackson v. Indiana, 406 US 715, 731-739 (1972); Greenwood v. United States, 350 US 366 (1956). We have approved of postarrest regulatory detention of juveniles when they present a continuing danger to the community. Schall v. Martin, supra. Even competent adults may face substantial liberty restrictions as a result of the operation of our criminal justice*

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

*system. If the police suspect an individual of a crime, they may arrest him and hold him until a neutral magistrate determines whether probable cause exists. Gerstein v. Pugh, 420 US 103 (1975). Finally, respondents concede and the Court of Appeals noted that an arrestee may be incarcerated until trial if he presents a risk of flight. See Bell v. Wolfish, 441 U.S. at 534, or a danger to witnesses.*

*Respondents characterize all of these cases as exceptions to the "general rule" of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial. Such a "general rule" may freely be conceded, but we think that these cases show a sufficient number of exceptions to the rule that the congressional action challenged here can hardly by characterized as totally novel. Given the well-established authority of the government, in special circumstances, to restrain individuals' liberty prior to or even without criminal trial and conviction, we think that the present statute providing for pretrial detention on the basis of dangerousness must be evaluated in precisely the same manner that we evaluated the laws in the cases discussed above." (Salerno, p. 748-749).*

    a. Rehnquist and the Supreme Court's willful abandon of their sacred duty to the Constitution, the people, and liberty is a repugnant repudiation of this entire Republic we hold so dear. Rehnquist cites exceptions where the rule of law is circumvented and liberty overruled in the interests of public safety or security. The Supreme Court uses examples of the government's detention of perceived enemies in times of war, but forgets this same argument was used to intern Japanese US citizens during WWII (See Korematsu v. US); the government used Rehnquist's same argument of exemptions to liberty—was that legal? Just? Outside this argument of exemptions to liberty in times of war, they argue that exemptions are applied in the detention of dangerous aliens, mentally unstable individuals, and the temporary detention of individuals suspected of a crime— none of these exemptions even came close to parallel the unprecedented proposal of total loss of liberty and indefinite detention of the accused based on the same allegations and evidence to be used against them at trial; none of these situations involves the indefinite suspension of ALL civil rights; the suspension of every constitutional right; the suspension of American citizenship. Indefinitely. The closest examples to suspension of all rights to a group of people (in this case, the accused) would be the Jews during WWII, the Japanese US citizens in WWII, or African-Americans in the Jim Crow era (not to mention slavery itself). So the only parallels we can draw are from wretched acts of tyranny; these are the similarities Rehnquist failed to mention. Here, Congress is asking for the "exemption" to overrule the entirety of the Bill of Rights—rights declared inalienable and paramount to Americanism—based on a single judge's determination that it's possible the defendant could, maybe, possibly, commit

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

some future crime. Congress then allows the court to disable this person's entire liberty and life—not just the right not to be incarcerated, but the right and freedom to enjoy life, to exercise free will, to love and be loved, to be at peace and seek the pursuit of happiness—it disables an individual's liberty interest not because of war or some extenuating circumstance, but for "the greater needs of society". How many murders and how much evil has been inflicted upon this world by those who've uttered this same utilitarian principle? It is argued that the threat of an individual to the community—the perceived prediction of his potential future actions require the State to step in to protect the people. For safety. For security. But this is NOT justice:

*"Grave public danger is said to result from what [the defendants] may be expected to do, in addition to what they have done since their conviction. If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated, but as yet uncommitted, crimes. Imprisonment to protect society from predicted but unconsummated offences is... unprecedented in this country, and... fraught with danger of excesses and injustice..." Williamson v. United States, 95 L.Ed. 1379, 1382 (1950) (Jackson, J., opinion in chambers).*

(1) Justice is worth more than security. The sacrifice of one innocent man to save one thousand is unacceptable in a just society—and yet, here today, the Supreme Court and American judiciary gladly sacrifice the innocent, the legally presumed innocent, for the mere POSSIBILITY of a future crime. Alas, justice forbids this. Justice forbids sacrificing the innocent and defenseless for the perceived greater good—this is a slippery slope and terrifying ride that only ever ends in tyranny.

*"Justice is worth more than well-being or efficiency, and is better than either, and must not be sacrificed to them, even for the happiness of the greater number."*

*"Those who voluntarily sacrifice liberty for security deserve neither."*

Indeed, it is always the tiny hole, that one exception to the Constitution, the "minor" override of liberty or curtailing of civil rights that inevitably leads to tyranny and oppression. Allow just one vulnerability, one exception to liberty, and you can be sure it will be exploited as the disease that is tyranny takes hold, festers and grows until it can no longer be contained.

7. SUMMARY: Pretrial detention, as defined by the Supreme Court, was ruled Constitutional because it is regulatory in nature and the numerous safeguards

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

provided sufficient due process. However, as we have shown, pretrial incarceration as currently implemented is unacceptable punishment. The safeguards claimed to exist do not; detention hearings, the presumption of danger, and the judge's ruling of likeliness-of-future-crime are an abomination to justice and unequivocally unconstitutional. Therefore, pretrial detention can't actually exist and the entire statute falls. Procedurally, the Constitution has devised one method by which total deprivation of a man's liberty can be taken—the conviction of a crime by a jury (or a judge if the defendant wants). It is clear that the protection of liberty by trial was specifically designed as a primary safeguard for the people. Only a jury can take your entire freedom through a unanimous decision of "guilt beyond all reasonable doubt"—not a single officer of the court through some ambiguous finding of "danger". Pretrial detention substitutes the high standard of "guilt beyond all reasonable doubt" with a judge's determination that the defendant could commit some future crime. A fundamental problem is the power of the majority and a judge's self-interest. Once a judge possesses such incredible authority, his power could be influenced by the public, the majority. An incident where an individual released causes harm could elicit scorn or backlash for the individual judge, but the incarceration of an innocent man, a man accused of a crime, has no similar weight; therefore, a judge is highly incentivized to detain before trial—especially in toss-up situations. A jury in a trial is protected from such backlash as they are normal people who sit through an entire trial and make a determination (and their identities are protected). This incentive for the judiciary is contrary to their edict in a Republic: the protection of the rights of the minority, but instead our judiciary caters to the whim of the majority and detain individuals with indifference; Judges have been desensitized to their destructive power over other human beings that they were never intended to posses. So, not only is the issue of predicting the future to determine dangerousness an unrealistic, daunting task, but its assignment to a single judge also severely undermines liberty and due process

a. On its own, a detention hearing to decide if a defendant should be incarcerated on day one of arrest is facially unconstitutional as violative of procedural due process as the only time a defendant is ready to answer allegations by the government is at trial.

b. On its own, the presumption of danger directly conflicts with the presumption of innocence and is facially unconstitutional as violative of substantive due process as true innocence has no danger component.

c. On its own, the prediction of an individual to commit a future crime based solely on his prejudicial grouping with defendants in the past is wholly offensive and facially violative of both procedural and substantive due process as the prediction itself presupposes guilty linkages amongst those presumed innocent (substantive)

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

and the analysis prevents proper procedure from looking at the specifics for each defendant individually (procedural).

d. On its own, the denial of bail is facially unconstitutional and violative of both the 5th amendment's substantive due process and the 8th amendment's excessive bail clause as the presumption of innocence and release prior to trial are critical to ordered liberty; bail denial and the imposition of pretrial incarceration violates the 8th amendment's cruel and unusual punishment clause for cruelly applying indefinite, psychological warfare and total loss of liberty and unusually directing this evil at the un-convicted, presumed innocent.

e. Pretrial detention enables coercive prosecutorial misconduct and directly results in the innocent pleading guilty.

f. Justice prevents the utilitarian concept of "for the greater good" as all people must be treated equally under the law. Surely, YOU would want the proper ability to defend your case free of the obstructions of federal prison?

g. In totality, an adversary hearing on day one of criminal proceedings when the prepared prosecutor presents evidence the defense can't view or properly fight to convince a judge that the defendant is dangerous and likely to commit some future crime based on a prejudicial grouping of all accused persons, thereby indefinitely incarcerating the defendant and subjecting him to coercive prosecutorial offers to attain freedom is the most deplorable, despicable, repugnant notion of justice ever conceived by man. The American façade of justice is thus revealed… to be total, utter tyranny.

*"Throughout the world today, there are men, women, and children interned indefinitely, awaiting trials which may never come or which may be a mockery of the word, because their government believe them to be 'dangerous'. Our Constitution, whose construction began two centuries ago, can shelter us forever from the evils of such unchecked power. Over 200 years it has slowly, through our efforts, grown more durable, more expansive, and more just. But it cannot protect us if we lack the __courage,__ and the __self-restraint,__ to __protect ourselves__. Today a majority of the Court applies itself to an ominous exercise in demolition. **Theirs is truly a decision which will go forth without authority, and come back without respect."***

*I dissent.*

**Thurgood Marshall**

It's time to finally right this wrong.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

III. Illegal actions pre-arrest: Outline of the pre-arrest assaults by the Federal Terrorists from the fascist Police State once known as the United States of America. Incredulously, the Police State is an unmonitored, reckless entity that destroys all in its wake. Mr. Schulte outlines how the FBI lied to federal judges to get what they wanted, deceived Mr. Schulte and stole his property, and engage in open psychological warfare. The judiciary adjudicated this oppression by failing to examine search warrants, but rather haphazardly signed anything presented to them because there are no longer any repercussions for 4th amendment violations; in fact, the 4th amendment has been successfully nullified by the courts—and this is its result:

A. FBI deceived plaintiff and enticed conversation under false pretense
1. FBI told plaintiff they needed his help and asked for a few minutes of his time
   a. Prior to meeting the FBI already searched plaintiff's home under covert warrant
2. FBI did not read plaintiff his rights
3. FBI did not record conversation on purpose so they could lie and engage in illegal activities without future scrutiny
4. FBI told plaintiff they would not permit him to leave the country no matter what
5. FBI told plaintiff they could not afford another Snowden
6. FBI steal plaintiff's cell phone and passport
   a. After intimidating and threatening plaintiff with arrest, FBI stole the plaintiff's cell phone; there was no signed consent search
   b. Plaintiff specifically told FBI they did not have his consent to search and could not image his phone
   c. FBI then handed plaintiff a subpoena for his cell phone and said they didn't need his consent to search the phone
   d. Plaintiff demanded cell phone back, but FBI walked away with it, stealing it
7. 7-8 total FBI agents flanked plaintiff, intimidated, and coerced plaintiff
   a. Plaintiff had no attorney
   b. Plaintiff had no idea his rights
   c. Plaintiff was threatened, afraid, and vulnerable
8. FBI presented plaintiff with search warrant and held plaintiff against his will without arrest warrant
   a. Plaintiff eventually demanded release
   b. Plaintiff was menacingly followed by FBI around NYC, going into public places after defendant left and demanding to know what defendant did
9. FBI eventually followed plaintiff back to his place of employment at Bloomberg
   a. FBI demanded passport on threat of immediate arrest
   b. Plaintiff had no attorney to discuss decision, and did not know his rights or choices
10. FBI are bullies, fascists, and terrorists
    a. Whatever the FBI wants, the FBI gets, notwithstanding any rule of law

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    b.  FBI seize first and investigate later

    c.  FBI do not care about the truth—but only finding someone to arrest and charge

    d.  FBI's behavior consistent with the Nazi's Gestapo

    e.  FBI ruthless, guileful, and evil

    f.  FBI are trained in "Denial and Deception"; they learn how to lie and manipulate people and they use this training against the judiciary

B.  FBI compiled a false search warrant affidavit in reckless disregard of the truth to seize all of plaintiff's electronic devices in a conscious effort to seize first and investigate later, relying on immunity from the Good Faith Exception by simply feigning ignorance (See Illegal Search Warrants in Appendix E, 1&2)

    1.  The Good Faith Exception established in US v. Leon is an abomination to the Constitution as it nullifies the 4th amendment and encourages hasty, reckless warrants at best, and purposeful deceit at worst

    2.  All probable cause wrong and even fabricated—no basis at all for FBI's assertions

    3.  Seize first, investigate later: FBI acknowledged that search only occurred because plaintiff was leaving the country—if plaintiff had not been leaving country there never would have been a search of his premises

    4.  All "evidence" is stale, contemporaneous, over a year old

    5.  No actual evidence of a crime in entire search warrant

    6.  No connection to VA home, NY apt; No nexus between fruits of crime and residence

    7.  No connection to electronic devices, but seizure of electronic devices based solely on FBI's desire for it; No nexus between fruits of crime and electronics

    8.  No actual evidence ANY of plaintiff's electronics used in crime

    9.  Broad, limitless warrant without specificity required in 4th amendment

    10. General warrant without filter of responsive data

    11. Most falsities recognized as such in later Brady Letter, but not all lies acknowledged

    12. Found nothing so ultimately unreasonable to expect crime occurred

C.  FBI compiled a second false search warrant affidavit in reckless disregard of the truth to search for child pornography offenses (See Illegal Search Warrants in Appendix E, 3&4)

    1.  Strangely, the FBI began searching the plaintiff's devices for child pornography almost immediately after seizing devices including at the CIA—why?

    2.  The FBI ACKNOWLEDGE they used initial search warrant for espionage to begin searching plaintiff's electronics for child pornography despite no probable cause or legal warrant to do so.

    3.  The FBI illegally searched plaintiff's entire electronic devices and cyber footprint with no constraints

        a.  FBI searched for evidence of ANY possible crime

        b.  FBI used this non-responsive data to apply for this second search warrant

    4.  FBI used Google searches from 5-8 years prior to their claimed espionage date

        a.  FBI's search warrant gave them no authority to search old Google searches

      b. FBI cherry-picks and lies to federal judge about three out of millions of searches and claims plaintiff was searching for child pornography despite evidence to the contrary

5. FBI used a picture in pagefile.sys (swap space) to claim child pornography offenses
      a. FBI's search warrant gave them no authority to search for pictures in swap space
      b. FBI lies to federal judge about location of picture, and fact that existence in swap space could mean several different alternatives outside plaintiff's control
      c. FBI lies to federal judge about picture failing to match hash of any known child pornography or passing any test of child pornography
      d. FBI lies to federal judge as picture is a painting/cartoon and not child pornography

D. FBI seem to realize their numerous mistakes and compile new search warrants with more/different evidence all seized from illegal searches
  1. New search warrants use Google searches, cherry-picked and out-of-context to claim nonsensical technical reasons
  2. FBI believes their new search warrants nullify the lies they told in initial warrants
  3. FBI believe as long as they tell the judge they broke the law then it's okay to do so

E. FBI engaged in ruthless attack of all friends and family
  1. Made all interviewed people sign NDAs to protect and conceal FBI's illegal actions
  2. Told people plaintiff was guilty of insidious CP offenses to elicit support; requested numerous people to secretly record plaintiff in the hopes of sneaking a confession
  3. Obtained hundreds of recordings throughout the summer of 2017
      a. While represented by counsel, FBI circumvented and requested CIA investigator to interrogate plaintiff without an attorney present
      b. While represented by counsel, FBI circumvented and requested CIA personnel record plaintiff without consent
      c. All thousands of hours of recordings consistent with plaintiff's innocence
  4. Slander and libel used without the slightest hesitation

F. Plaintiff willfully met with FBI and prosecutors to assist espionage investigation
  1. Plaintiff provided extensive assistance to the FBI's investigation
  2. Plaintiff was fully truthful and answered all questions asked by the FBI
  3. FBI used proffer sessions for espionage as a ruse to gather plaintiff statements for planned use against him in child pornography investigation

The FBI wrote their conclusion first—that Mr. Schulte was guilty of espionage—before ever investigating anything. The FBI has committed similar egregious errors before; most notably, in the Hanson investigation the FBI targeted an innocent CIA officer and destroyed his life simply because they could. The FBI does not need evidence. The FBI does not follow the law. The FBI believe themselves above the law—they think they have unlimited power to do as they wish. The FBI are bullies, fascists of the Police State who are not monitored by Congress and answer to no one.

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

IV. Illegal actions post-arrest: Outline of the post-arrest assaults by the Federal Terrorists from the fascist Police State once known as the United States of America. Imbued with limitless destructive power, US Attorneys are not motivated by justice or truth, but rather, glory and power. US Attorneys seek unblemished trial records and steamroll the innocent to maintain these records. US Attorneys use the full resources of the USG to decimate their opponents and coerce guilty pleas. Mr. Schulte challenges these perverse incentives and the unending lies they tell, without reprisal, to the federal judiciary. Federal judges work hand-in-hand with prosecutors to detain, disable, and destroy all those accused of a crime. It is the classic David v. Goliath: When the docket reads the United States of America vs. YOU, truly you face the uphill battle of Sisyphus. At every turn, every time Mr. Schulte tried to fight back, the government retaliated and silenced him. The government stifled free speech, sought to destroy all of Mr. Schulte's writings, and even prevented him from any future publications. The Police State will NOT tolerate dissent, and has forcefully silenced Mr. Schulte for good by outright lying and claiming national security reasons. Today, the government gets to speak and Mr. Schulte is barred from responding. He is literally locked in a cage 24 hours a day, 7 days a week and tortured indefinitely for speaking out against the criminal justice system.

A. AUSA takes advantage of broken criminal justice system, unconstitutional bail system, and illegally obtained materials to charge plaintiff and request remand as danger to the community

1. Plaintiff previously met with AUSAs and assisted espionage investigation
2. DOJ claimed CP evidence since April but never charged defendant and permitted defendant free reign in US
3. After failing to obtain a taped confession, AUSA decides to coerce plaintiff with CP charges
4. AUSA flipped "switch" and claimed that now since defendant had been charged, NOW, 4 months later, he was a danger to the community
5. Plaintiff had never seen CP evidence and was not permitted to review evidence during bail hearing
   a. Later the plaintiff discovered all the evidence the AUSA presented in the bail hearing was a lie, but it served their purpose of detention
   b. 3 cherry-picked Google searches used against plaintiff from 2009 and 2011; Searches so obviously not intended to search for and obtain child pornography that no reasonable individual would ever believe so
   c. Cherry-picked IRC chats that were not even legitimate chat logs, but modified text documents
   d. Search warrants including CP search warrant violate 4th amendment and so egregiously unconstitutional that plaintiff never should have been prosecuted
6. Plaintiff was denied presentment of evidence in his favor during bail hearing

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

      7. Plaintiff was declared a danger to the community and incarcerated on day one of the accusation of a crime

        a. Plaintiff has never breathed free air since arrest

        b. Plaintiff has never been granted a presumption of innocence

        c. Plaintiff has never been given an unbiased, fair hearing

        d. Plaintiff had never been in any legal trouble and held the highest security clearance in government prior to this first arrest

B. AUSA used CP charges to try to coerce espionage confession

    1. AUSA said he did not want a CP case but an espionage case

    2. AUSA told plaintiff's attorneys every day that plaintiff was incarcerated pre-indictment that plaintiff should plead guilty to espionage to "prevent embarrassment" of CP charges and would be released from prison

    3. AUSA and all federal prosecutors do not care about finding the truth or establishing justice, but rather, what they can get away with; what they can charge, how they can squeeze defendants, and how to maximize coercion of guilty pleas to obtain glory

    4. AUSA knew plaintiff was not guilty of CP nor espionage, but wanted a guilty espionage plea so used false CP charges as leverage to pressure defendant

    5. AUSA Matthew Laroche (The ROACH) guilty of fabricating evidence, manipulating evidence, and lying to a federal judge and will be disbarred.

C. After plaintiff eventually released on bail of harsh, unconstitutional conditions, DOJ stalked plaintiff's residence searching for violation

    1. FBI routinely interviewed neighbors and apartment staff asking if they had seen plaintiff

    2. FBI used insidious charges to tell neighbors and staff to elicit support and establish hatred of plaintiff; Slander and libel

D. FBI seek revocation of bail

    1. The DOJ must have all people accused of a crime in federal prison and will do whatever it takes to achieve this end

    2. The FBI coordinated with Virginia to charge plaintiff with a new crime to achieve remand back into federal prison

    3. The FBI ignored the fact that plaintiff lived with cousin, who was authorized to use the internet AND take care of plaintiff's affairs including email and bill pay

    4. The FBI lied to the federal judge to claim TOR was accessed, when in reality, plaintiff's cousin never installed TOR nor knew what TOR was

    5. The judiciary loves any reason to punish defendants and sentence them pre-trial and the judge gladly took defendant's bail and declared him a danger to the community despite the fact that his cousin using the internet and Virginia charges predating federal charges do not make plaintiff anymore "dangerous" than he was before—0.

    6. Despite Virginia arrest and agreement to writ plaintiff for Virginia case, after plaintiff in federal custody then Virginia drops writ and files detainer

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    a. Plaintiff has tried continually to proceed to Virginia for state case

    b. Virginia has refused to move case forward, further evidence that Virginia case was a mere ploy to have plaintiff remanded into federal prison

7. Since federal prison and detention are one in the same, the federal government wins; regardless of the outcome of plaintiff's trial, the AUSA and FBI have succeeded in sentencing plaintiff to federal prison. Plaintiff has spent over a YEAR in federal prison! Plaintiff's finances and reputation are decimated beyond repair.

E. AUSA retaliates against plaintiff for contacting a reporter

1. Plaintiff knew his calls were illegally monitored; chose to contact a reporter because he felt unconstitutional issues in his case should be known by the public

    a. Plaintiff and reporter constantly reminded each other call was recorded and plaintiff only told reporter unclassified information about his case.

    b. Plaintiff went above and beyond to PROTECT classified information.

2. Despite plaintiff's charges of child pornography, plaintiff chose to publicize his case due to government malfeasance even thought plaintiff could have stayed hidden in the shadows

3. AUSA brought down the hammer and claimed plaintiff violated protective order by giving media illegal search warrants

    a. Plaintiff never gave illegal search warrants to anyone

    b. There was never any evidence plaintiff gave illegal search warrants to anyone

    c. Plaintiff never even had illegal search warrants because the protective order banned him from viewing them

    d. Plaintiff did not even know or understand what a protective order was, and said as much on the phone to the reporter—which he recommended the reporter to contact his attorney or try a FOIA request to obtain illegal search warrants

4. AUSA has continually used this incident to claim plaintiff willfully violated court order despite the incident not having taken place at all; AUSA gets to lie and plaintiff can't respond

5. AUSA retaliates by superseding plaintiff for espionage charges

    a. To date, not one shred of evidence exists implicating plaintiff

    b. Federal Terrorists obtained no new incriminating evidence between plaintiff's arrest in August and superseding indictment in June

    c. Federal Terrorists looked bad and decided to save face they had to supersede plaintiff and charge with espionage

    d. Plaintiff used as scapegoat because FBI too incompetent and technologically incapable of actually investigating leaks

F. AUSA retaliates against Plaintiff for bail application seeking bail for all pretrial inmates

1. Government cannot allow any such argument to disrupt their prison industrial complex and use of federal prison pretrial to coerce guilty pleas

2. AUSA claims plaintiff's bail application was classified

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

3. Federal Terrorists raid law offices of an attorney in Texas that the plaintiff was conferring regarding the bail application
   a. Bail application was attorney-client privilege
   b. Federal Terrorists take all other attorney-client documents from attorney's offices
   c. Federal Terrorists utilize illegal wiretaps on prison phones to discover plaintiff's attorney and prevent further contact between plaintiff and attorney

G. Federal Terrorists retaliate against plaintiff for criminal justice reform literature (See Illegally Confiscated Literature in Appendix F)
   1. Family and friends setup Facebook page and GoFundMe in support of plaintiff and publish drafts of articles that plaintiff wrote regarding the criminal justice system while he was on house incarceration
   2. Federal Terrorists order family to remove Facebook articles
   3. Federal Terrorists fly out to Lubbock, Texas to intimidate and force plaintiff's mother to delete plaintiff's literature regarding criminal justice system
      a. Articles literally written about criminal justice system and NOT about plaintiff's specific case
      b. Other literature written critical of FBI and DOJ deleted
   4. Incredible violation of freedom of speech as the government seeks to prevent any and all publication of documents condemning criminal justice system
   5. Friends setup WordPress page at http://presumptionofinnocence.net that Federal Terrorists target and remove articles

H. Federal Terrorists classify exculpatory evidence and other evidence damaging to their case (See Illegally Classified Brady Letter in Appendix G)
   1. Federal Terrorists classify Brady Letter that indicates entire first search warrant was a lie
   2. Federal Terrorists classify audio recordings that are exculpatory to defendant
   3. Federal Terrorists classify plaintiff's desktop computer that allegedly contains child pornography, but to date, 16 months later they have still refused to turn over what they claim was classified—which severely restricts the review of this computer
   4. Federal Terrorists hide exculpatory evidence in child pornography case until December, 2018, and then classify this evidence
   5. Federal Terrorists refuse to provide classification reason for illegally classified documents, instead claiming they are "classified pending review" but will never be reviewed
      a. This allows the government to classify anything and everything and the plaintiff has no legal mechanism of challenging documents
      b. The government is supposed to have the burden of proof for showing why documents are classified, but the government does whatever they please and no one stops them
      c. Federal Terrorists refuse to clear ANY attorneys so far for this case

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

6. Federal Terrorists present altered, potentially falsified forensic images to plaintiff and try to pass them off as originals

7. Federal Terrorists deny plaintiff vast majority of requested classified materials that will almost certainly exonerate plaintiff

8. All other documents in plaintiff's case are protected behind an all-encompassing protective order so that no documents can be revealed to the public, including the illegal search warrants

   a. This is a violation of the first amendment right of access and the public's right to monitor and audit the courts

   b. Government is supposed to have the burden of proof for showing protected documents should not be revealed, but the government does whatever they please and no one stops them

I. Federal Terrorists retaliate against plaintiff for writing expert report to testify for an inmate against the government (See Illegally Confiscated Technical Export Report in Appendix H)

   1. Federal Terrorists discover that the plaintiff is using his technical experience and knowledge to challenge them in other cases in which they lie and deceive a jury to wrongfully convict another man

   2. Federal Terrorists then obtain new fabricated search warrants to search the federal prison to take all plaintiff's legal documents

J. Illegal MCC search warrants and subsequent new charges (See Illegal Search Warrants in Appendix E, 5)

   1. The Federal Terrorists request and receive an illegal search warrant to search all documents from plaintiff's cell using as their sole justification, the fact that the plaintiff is accused of child pornography, espionage, and testimony from a snitch

      a. Federal Terrorists had no evidence of plaintiff actually using cell phone or of any illegal activities conducted from cell phone (nor did the snitch claim this)

      b. Federal Terrorists relied on "testimony" from a jailhouse snitch who had been caught with multiple cell phones in his cell and wanted a quick way out

   2. The Federal Terrorists receive search warrants to search and seize documents from an entire floor at the MCC

      a. Plaintiff is not on this floor when search warrant is requested

      b. Plaintiff is not on this floor when search warrant is executed

      c. FBI decide they have authority to modify search warrant as it's in progress and search other floors at the MCC and eventually search and seize all of plaintiff's cell documents

   3. The Federal Terrorists do not find any cell phones and have no reason to search plaintiff's legal documents but do so anyway since they do not have a case

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

        a. Illegal search warrants include search and seizure of articles and literature that plaintiff wrote critical of criminal justice system in another outrageous violation of freedom of speech

        b. Federal Terrorists also seize the documents plaintiff wrote as an expert report for another inmate who was similarly terrorized by the Federal Terrorists

4. The Federal Terrorists then file a new search warrant requesting review of attorney-client notebooks and the establishment of a wall team to conduct that review—their probable cause justifying the search and wall team was evidence they found in the very notebooks they sought the search warrants to review

5. The Federal Terrorists use passwords plaintiff wrote in his legal documents for his attorneys to seize and shutdown various accounts

6. The Federal Terrorists claim to find classified information in plaintiff's legal notebooks that were only ever given to his attorneys

7. The Federal Terrorists claim this constitutes transmission and attempted transmission of national defense information and charge defendant

K. Federal Terrorists retaliate against plaintiff yet again and Former Attorney General Jeff Sessions writes and immediately sends a request to the BOP to torture plaintiff indefinitely with Special Administrative Measures (SAMs) with concurrence from the CIA and FBI (See Illegal Torture Order in Appendix I)

1. "Based upon Schulte's unauthorized disclosure of classified information and the fact that he retains knowledge of such information, as well as the recommendation of the CIA, the United States Attorney for the Southern District of New York (USA/SDNY) requests that SAM be imposed on Schulte. The Chief of the Counterintelligence and Export Control Section of the National Security Division (CES/NSD) and the Federal Bureau of Investigation (FBI) concur in this request."

        a. Plaintiff declared guilty by the executive branch and therefore order the BOP to torture plaintiff

        b. Literally nothing except the allegations pending in federal court against plaintiff are used as the sole basis to implement SAMs

2. "… Access to the LAN, on which the classified information was stored, was limited to employees of the CIA Group (approximately 200 people at the time Schulte stole the classified information in question in 2016)

        a. AG lies about the number of people who had access to the classified information, a lie that has persisted since the beginning of the FBI's investigation—and which has absolutely limited their ability to investigate

        b. AG also once again blatantly claims that plaintiff is guilty

3. "… Following the Wikileaks disclosures, subsequent investigation by the CIA and FBI determine that in 2016, Schulte used his access to the local area network (LAN) to steal classified information and later transmit it to WikiLeaks."

        a. This is a lie, a slanderous lie without one shred of proof

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

4. The AG lies and claims the plaintiff accessed his email account and used the internet because of IP logs, continuing to deny the plaintiff's cousin's use of the internet

5. The AG lies and claims the plaintiff accessed TOR

6. The AG lies and claims the plaintiff violated a protective order that was "imposed upon a determination that a protective order was necessary to protect materials that, if disseminated to third parties, could jeopardize national security and the safety of others, as well as impede ongoing investigations" which is utter bullshit

7. The AG lies and claims that "the FBI determined that since his incarceration, Schulte has made at least three unauthorized disclosures of classified information"
   a. The AG lies and claims the plaintiff disclosed the identifies of undercover CIA officers in April 2018
   b. The AG lies and claims that the plaintiff's bail application was classified
   c. The AG lies and claims that "despite having been warned that his bail motion could contain classified information, Schulte mailed the motion to an attorney in Texas whom he was soliciting to assist on his case and also provided a copy to his parents"

8. "Finally, recent developments have further underscored the need for SAM in this case. Specifically, the USA/SDNY has learned that Schulte, along with another inmate, arranges for at least two cell phones to be smuggled into the MCC, one for each of them to use. When combined with his flagrant disregard for the laws regarding the handling of classified material and for the Court's protective order, this recent conduct, which allows Schulte to communicate without scrutiny, confirms that he poses a significant threat to national security"
   a. This is an outrageous lie, and the government has never turned over any evidence suggesting the plaintiff arranged for any devices to be smuggled into the MCC
   b. The plaintiff was not charged with smuggling any devices into the MCC

9. Former Attorney General Jeff Sessions is a despicable liar

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

V. Non-Monetary Damages Sought

A. Release of plaintiff from federal prison and freedom for all slaves detained indefinitely without a trial

   1. The plaintiff is currently tortured by the United States of America

   2. There is no exemption in the Bill of Rights for those accused of a crime

   3. Deprivation of liberty and the Bail Reform Act of 1984 is unconstitutional

      a. Never in America's history (prior to 1984) was pretrial detention acceptable

      b. Current implementation of pretrial detention is comparable to Nazi war crimes and is an unconscionable crime against humanity

B. The good faith exception to the 4th amendment declared Unconstitutional

   1. There is no exemption in the 4th amendment for the government "trying its hardest"

      a. The 4th amendment is very specific in its requirements to guarantee Americans safety in their homes and property; this was a founding principle of this country

      b. A magic lamp for law enforcement to rub every time they make a mistake removes all consequences for illegal police action

C. Mandatory minimum sentences declared Unconstitutional

   1. Mandatory minimums is a violation of separation of powers

      a. Only the judicial branch of the government has the sole power to sentence

      b. Legislation that requires certain punishment is a violation of due process since specific case circumstances are ignored

   2. Congress can pass legislation for sentence recommendation ONLY

D. Plea deals declared Unconstitutional

   1. Plea deals incentivize the innocent pleading guilty through coercion

   2. Plea deals deny the defendant the right of trial

E. Consent searches declared Unconstitutional

   1. Consent searches violate the 4th amendment; if law enforcement have probable cause then request a warrant otherwise don't search

   2. Consent searches can never help the defendant but can only harm them so the government must protect the people from police coercion

   3. Most people don't even know that they can say "no" to the police and the police can use intimidation, fear, and coercion to trick a defendant into giving up his rights

   4. Since it doesn't make any sense to require the American people to attend law school, the government must protect the people from the overzealous Police State

F. Classified Information Procedures Act (CIPA) declared Unconstitutional

   1. Classified, closed hearings and motions violate the 1st, 5th, and 6th amendments: The People have a right to monitor the courts, governments, and their decisions

   2. Requiring cleared attorneys violates the 6th amendment as the government can deny chosen counsel and could essentially label only ineffective attorneys as cleared

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

3. The notion of classified information in criminal procedures serves only to undermine a defendant's constitutional rights; if the government accuses someone of a crime, the defense is entitled to ALL related discovery

4. The government has no expectation of privacy or secrecy in criminal procedure; National security is null and void in criminal procedure

G. Disbandment of the Fascist Police State including the FBI

1. The FBI is the greatest terrorist organization in the world

   a. The FBI enslave and destroy more lives than any other terrorist organization in the world

   b. The FBI bully and target people with tax payer dollars, guaranteeing their victory against any who dare to challenge them through incarceration and torture

   c. Innocent American citizens plead guilty to LEAVE prison, reading statements drafted by the federal prosecutor in an astonishingly similar situation to the "justice" we see in North Korea and other Police States

2. Federal Terrorists engage in gross racism to enslave and decimate black American men in the American Holocaust

   a. The Nazis created and targeted the ghettos to detain Jews, torture, and murder them in an attempt to annihilate the Jewish population from Europe in The Final Solution

   b. The Federal Terrorists create and target the ghettos to detain American black men, torture, and murder them in an attempt to annihilate the African race from North America

   c. The Federal Terrorists create entire generations of black men who have spent their entire lives in prison and therefore have limited to no education, heightened aggression and violence, weariness and dislike of the police, and an inability to re-enter society

   d. The Federal Terrorists literally create violence and a cycle of incarceration and poverty so that they can then target the newly created violence and create new criminals; they create monsters so they can hunt them

3. The Federal Terrorists create crime as a business; they generate violence and escalation to enslave people in the prison industrial complex

4. The federal government only grows in size, so each year the FBI and Police State receive more money from the American people to further their war on the innocent

5. The FBI and most federal criminal laws violate the 9th and 10th amendments

   a. The commerce clause is manipulated and used as the reason for the creation of the Police State including illegal laws like the Hobb's Act that expands federal jurisdiction over all robberies

   b. Ambitious federal prosecutors care nothing about justice, but are perversely incentivized to destroy innocent lives to build their own careers and reputations

   c. The Constitution never intended for the creation of federal law enforcement

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

VI. Monetary Damages Sought
  A. Theft of cell phone by the FBI; deception, intimidation, and unlawful detainment
    1. Total: $100,000
  B. FBI's contact of friends, colleagues, and family to slander and defame plaintiff
    1. Includes FBI interviews conducted just to tell people that plaintiff is guilty of child pornography and other lies
    2. $10,000 per instance
    3. Estimated 27 instances
    4. Total: $270,000
  C. Illegal search warrants
    1. FBI lies told to the judiciary, manipulation of evidence, deception, and falsification of evidence: $10,000,000 per instance
    2. Failure of the courts to properly review search warrants, question the FBI, and safeguard the defendant's 4th amendment rights: $25,000,000 per instance
    3. At least 3 instances: First search warrant for espionage, child pornography search warrant, and MCC search warrant
    4. Total: $105,000,000
  D. Detention hearing and illegal incarceration
    1. AUSA and FBI lies in criminal complaint and lies told to judiciary: $10,000,000 per hearing
    2. Court's denial for plaintiff to present evidence on his behalf, review evidence presented against him, and call witnesses in his favor: $25,000,000 per hearing
    3. Court's denial of due process: $25,000,000 per hearing
    4. 3 bail hearings
    5. Total: $180,000,000
  E. Prison expenses
    1. Phone calls must be paid entirely by prison
    2. 20 15-minute phone calls per month @ $3.15 per call
    3. 2 months in 2017, 9 months in 2018, 11 total months
    4. Total: $693
  F. Government's attempt to conceal Brady letter, search warrants, and other exculpatory evidence by classifying them, holding them in an illegal protective order, or denying them to the plaintiff
    1. The AUSA attempted to classify the Brady Letter to hide the embarrassment
    2. The AUSA hid all illegal search warrants in a protective order to hide them from the public
    3. The AUSA is currently denying the plaintiff 99% of all discovery because of claims it is too voluminous and classified to shared with defendant
    4. The AUSA has presented the defendant with *modified* forensic images and attempted to pass them off as originals in an outrageous violation of evidence integrity

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    5. Total: $10,000,000

G. BOP's denial to the defendant of his discovery because they simply do not want to give it to him

    1. The BOP claims that SAMs restrict the plaintiff to no discovery review and have not provided him with a chance to review his discovery since October

        a. $10,000 per day for denial of discovery review

        b. 90 days denied

        c. Total: $900,000

H. Pretrial incarceration in federal prison

    1. Even if the Bail Reform Act of 1984 is considered legal, the government must reimburse all detained individuals for their loss of liberty

        a. Eminent domain is the legal confiscation of property by the federal government, but in return the government MUST pay top dollar to the owner

        b. Similarly, even if pretrial detention is legal, it is still the deprivation of liberty of those legally presumed innocent, and therefore requires indemnification

    2. DOJ chose to incarcerate plaintiff in a federal prison managed by the Bureau of Prisons

        a. The Bureau of Prisons' primary responsibility prior to the Bail Reform Act of 1984 was to manage convicted felons sentenced in federal prison

        b. The BOP does not differentiate pretrial inmates from convicted felons

        c. The BOP affords no amenities to pretrial inmates

        d. The BOP offers no training for handling pretrial inmates

        e. The BOP's failure to differentiate detention centers from federal prison, besides in name only, results in a violation of US v. Salerno as there is no functional difference between pretrial detention and incarceration

           (1) In fact, in many cases, pretrial detention is worse than incarceration for convicted felons

           (2) The BOP considers all pretrial inmates as if they were convicted

    3. Pretrial detention is slavery

        a. Pretrial detention is the incarceration of the legally innocent

        b. Pretrial detention results in job loss, loss of promotion or new job opportunities, loss of training, loss of education, loss of financial independence

        c. Pretrial detention results in a deteriorated relationship with the spouse, children, and family

        d. Pretrial detention results in a loss of joy and entertainment

        e. Pretrial detention results in a loss of health and well-being

        f. Pretrial detention results in societal stigma and difficulties returning to society

        g. Pretrial inmates who work for the BOP earn pennies

        h. Most pretrial inmates are forced to work for free, against their will

    4. There must be a cost to the government associated with deprivation of liberty

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

    a. There must be financial constraints to keep the government honest

    b. Without financial constraints, the government will choose to detain everyone and torture them until they plead guilty, and alas, that's exactly what happens

    c. The cost for loss of liberty must be high

    d. This cost would also incentivize the government to speed the case along instead of glacier-speed progress

5. Cost if US v. Salerno followed legally

    a. If US v. Salerno were properly followed, pretrial detention would literally be a hotel resort blocked off from society. Pretrial inmates would have all the exact same rights they had in the real world, including phone, internet, games, etc. Pretrial detention must be a relaxing stay for those LEGALLY PRESUMED INNOCENT

    b. The cost in this case would be $10,000 per day for the deprivation of liberty

6. Cost for slavery and deprivation of liberty at the hands of the DOJ and BOP

    a. $100,000 per day

    b. Plaintiff spent 2 months in 2017 and 9 months in 2018, for a total of 11 months

    c. Cost calculation uses 30 days per month

7. Total: $33,000,000

I. Torture and crimes against humanity

1. Solitary confinement is torture

2. See section I for unconscionable torture used against plaintiff

3. Plaintiff was held in solitary confinement within MCC's administrative segregation unit, known as the "Special Housing Unit", used to punish pretrial detainees

    a. This cost is $1,000,000 per day

    b. 30 days

    c. Subtotal: $30,000,000

4. Plaintiff was held under Special Administrative Measures, where he was tortured using similar techniques of the Nazis during World War II

    a. This cost is $10,000,000 per day

    b. 60 days (and counting)

    c. Subtotal: $600,000,000

5. Total: $630,000,000

J. Violation of freedom of speech and the FBI's removal and deletion of documents challenging the criminal justice system

1. Perhaps the only thing worse than torture is the forced deletion of all records of it ever happening

2. The plaintiff was engaged in writing multiple articles, books, and other literature challenging the Federal Terrorists and their use of torture and inhumane conditions against human beings legally presumed innocent

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

3. The punitive cost for the government burning books it doesn't like must be excruciatingly high to prevent this behavior
4. The United States of America was founded on freedom of speech and religion, and the Federal Terrorists' attempts to censor and conceal its illegal activities only confirms America's dissent into fascism
5. The cost associated with destroying non-conformist literature that the Fascist Police State dislikes is $100,000,000 per literary piece
6. The FBI forced the plaintiff's mother to delete the plaintiff's literature at the point of a gun; there were an estimated 12 pieces of literature deleted
7. The FBI confiscated literature written by the plaintiff at MCC in an outrageous attempt to stifle free speech and silence the plaintiff; 22 pieces of literature destroyed
8. Total: $3,400,000,000

K. Illegal search and seizure of attorney-client documents for use against the plaintiff
1. In addition to seizing and destroying all literature critical of the FBI, the FBI also illegally searched and seized numerous notebooks used by the plaintiff for communication with his attorneys
2. The total cost associated with this outrageous and fascist behavior is $1,000,000,000

L. Loss of income
1. Even if pretrial detention were Constitutional, the government must reimburse the plaintiff and all pretrial detainees lost income
2. Again, like with eminent domain, the government does not get to deprive American citizens of their civil rights without proper compensation
   a. Even if declared a legal deprivation of liberty, it is still a deprivation of liberty
   b. This cost is separate from the cost of incarceration because it is indemnification from the inability to work
3. Pretrial detainees could be permitted to work, or could have been released and allowed to work; the government chooses to detain them, thus the government chooses to pay them
4. 4 months missing salary from 2017 is $18,000 per month—$72,000
5. Average of 10% increase in 2018—$275,000
6. Schulte, LLC
   a. Plaintiff started his own business in 2017 and had phenomenal growth potential
   b. Plaintiff's company was a joint software company and consulting firm developing innovative security solutions for private citizens and large corporations
   c. Plaintiff's specialty was in computer security as he designed malware and had vast knowledge in the field of Antivirus, Intrusion Detection Systems, network security, Internet of Things (IoT) security, and extensive experience in design, infiltration, cracking, and reverse engineering of security systems
   d. Plaintiff designed several new, innovative security platforms for integration in cell phones, laptops, and tablets

## JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

      e.  Plaintiff designed consulting services for large corporations to assist in preventing data breaches that we have seen at Sony, Target, and all over the world

      f.  Total loss: $50,000,000,000

  7.  Schulte, LLC would have become a major company but instead was dissolved

      a.  Government confiscated or lost all Schulte, LLC intellectual property

      b.  Government arrested and detained plaintiff which prevented new inventions and innovations in the field of computer security

      c.  Imagine if the government decided to raid and destroy Microsoft, Apple, Amazon, Facebook, Google, or even Snapchat or Uber prior to their full development and launch

         (1)  Loss to society would have been monumental

         (2)  Loss to individuals would have been infinite

      d.  The federal government did not have to request a detention hearing for the plaintiff

         (1)  Plaintiff has never harmed anyone

         (2)  Plaintiff worked for the government for 7 years to fight terrorism

         (3)  Plaintiff has been productive member of society for 30 years

         (4)  Plaintiff denies charges

         (5)  Plaintiff fully cooperated with government after the illegal seizure of his property

         (6)  Plaintiff informed prosecutor everywhere he traveled in 2017: California, Virginia, Texas, Colorado, West Virginia, and Washington, D.C.

         (7)  Plaintiff met with prosecutors for multiple proffer sessions

      e.  Yet the prosecutor decided to flip a switch, claim dangerousness—even though they knew the plaintiff was not a dangerous individual—simply to destroy plaintiff's life and make defending himself impossible

      f.  Thus government must reimburse plaintiff fully for lost income

  8.  Total: 50,000,347,000

M.  Total indemnification to plaintiff: $55,359,617,693

Joshua Adam Schulte is an American citizen incarcerated indefinitely, tortured through solitary confinement and inhumane Nazi tactics, and declared a danger to national security based on his knowledge and experience working for the intelligence community to fight terrorism. The Federal Terrorists have transformed New York City into Guantanamo Bay; literally, downtown Manhattan houses a torture center not far from the Statue of Liberty. There is no freedom, no justice, no honor, and no humanity in America's criminal "justice" system. When will the federal courts stop protecting the government and start protecting the American people? Will the federal courts continue to make excuses and adjudicate torture and murder of the innocent or will they have the courage to step up and grant human beings the right to defend themselves from the most vicious bullies in the world?

# JOSHUA ADAM SCHULTE vs. THE UNITED STATES OF AMERICA

## Appendix

A. Magistrate Detention Order
B. District Court Release Order and Conditions
C. District Court Remand Order
D. "The Effects of Pre-trial Detention on Convictions, Future Crime, and Employment: Evidence from Randomly Assigned Judges", 2016, Will Dobiey, Jacob Goldinz, and Crystal Yang
E. Illegal Search Warrants
    1. Covert SW Application #1 3/13/17, Bates numbers: JAS_000030 – JAS_000065
    2. Overt SW Application #1 3/14/17, Bates numbers: JAS_000074 – JAS_000085
    3. CP SW Application #1 4/14/17, Bates numbers: JAS_000143 – JAS_000161
    4. CP SW Application #2 5/10/17, Bates numbers: JAS_000221 – JAS_000239
    5. MCC SW Application #1 10/1/18, Bates numbers: JAS_021006 – JAS_021036
F. Plaintiff's Redress of Grievances critical of the Unites States Federal Terrorists illegally confiscated and destroyed (draft) (Specifically targeted in illegal MCC search warrant application on page 2 of the attachment, Bates number JAS_021032)
    1. Presumption of Innocence: A Petition for a Redress of Grievances
    2. Presumption of Innocence: A Loss of Citizenship
    3. Presumption of Innocence: Do You Want to Play a Game?
    4. Presumption of Innocence: Detention is Not Punishment
    5. Presumption of Innocence: Guilty Until Proven Wealthy
    6. Presumption of Innocence: Can You Afford to be Accused?
    7. Presumption of Innocence: A Proposed Solution
    8. Presumption of Innocence: Origins
    9. Presumption of Innocence: … Diabolically Demented Demons
G. Brady Letter illegally classified
H. Plaintiff's expert technical report illegally confiscated (draft)
I. United States Attorney General Jeff Sessions' Special Administrative Measures memorandum directed to the BOP to torture plaintiff (illegal)





JODY
MCC
150 Park Row
New York NY 10007

ATTN: new prisoner Complaint for violation of Civil Rights

Clerks office

Southern District of New York

500 Pearl Street

NY, NY 10007

Prose

EK

RECEIVED
APR 12 2019
CLERK'S OFFICE
S.D.N.Y.

USMP3
USDNY

RECEIVED
SDNY PRO SE OFFICE
2019 APR 15   AM 11:43
S.D. OF N.Y.

